TIMMY S., et al., Plaintiffs,

v.

Grady STUMBO, et al., Defendants.

Civ. A. No. 80–24.

United States District Court,
E. D. Kentucky,
London Division.

Sept. 15, 1981.

Marcia R. Lowry, George Kannar, Am. Civil Liberties Union, New York City, Sarah V. Barber, Louisville, Ky., Angela Sherbo, Julie Ann Hankin, Appalachian Research & Defense Fund of Ky., Hazard, Ky., for plaintiffs.

Paul F. Fauri, Patricia Shipman, Martin Z. Kasdan, Jr., Dept. for Human Resources, Frankfort, Ky., for defendants.

## MEMORANDUM

SILER, District Judge.

This action was brought by the plaintiffs, on their own behalf and allegedly on the behalf of a class of persons similarly situated, to protest the defendants' violation of the Constitution and various state and federal statutes in the course of their administration of federally funded programs which provide benefits and services to children and families. Injunctive and declaratory relief is sought, along with individual compensatory damages and attorneys fees. At issue in the case is the defendants' alleged failure to provide the plaintiffs a meaningful opportunity to be heard on grievances which arise from the defendants' operation of child welfare programs. The plaintiffs maintain that such failure violates the Constitution, the Social Security Act and their contractual rights. Further, the plaintiffs, Timmy S. and Dolores S., pursuant to 42 U.S.C. § 1983, seek damages for the defendants' violation of their rights under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (as amended, 1978), and the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6001 *et seq.* (as amended, 1978).

This matter is presently before the Court on the defendants' motion to dismiss and the plaintiffs' motion for class action certification. The parties have fully availed themselves of the opportunity to brief these two motions, and currently the pleadings on just these two motions alone run over 200 pages. The Court will dispose of both motions in the accompanying Order appended to this Memorandum this date.

The complaint alleges that the defendants unlawfully failed and refused to provide federally-funded care and treatment to a handicapped child who was entitled to receive it, that they administered federally-funded programs in a manner which discriminated against the plaintiffs on the basis of the handicap, and that they have unlawfully failed to provide plaintiffs and others similarly situated with a meaningful opportunity to be heard in connection with grievances arising from the administration of these programs. To illuminate fully the legal context underlying the allegations in the complaint, a statement of the case, ab-

breviated from the plaintiffs' supporting memorandum, follows; for purposes of the motion to dismiss, the allegations in the plaintiff's complaint are assumed to be true. *Hilliard v. Williams*, 465 F.2d 1212, 1214 (6th Cir.), *cert. denied*, 409 U.S. 1029, 93 S.Ct. 461, 34 L.Ed.2d 322 (1972).

## A. THE FACTUAL BACKGROUND

The central figure in this case is a seven year-old boy, Timmy S. Though Timmy is seven years old chronologically, he only functions at the level of a one or two year-old baby, because Timmy S. is mentally retarded and emotionally disturbed. In addition, Timmy suffers from epileptic seizures. Diagnosed as autistic, Timmy lacks speech and is not toilet-trained.

Dolores S. is Timmy's mother. Like Timmy, Dolores suffers from serious handicaps, for since infancy, she has been unable to hear or to speak. Despite these handicaps, Dolores S., alone since her divorce, managed to care for Timmy and her two other children in her home until May of last year, supporting the family with her earnings from a part-time job with the U. S. Postal Service. Having Timmy in her one-parent home created problems for Mrs. S. and her other children; for as Timmy grew up, he developed a number of destructive and dangerous habits. In particular, he enjoyed wandering through the family home at night knocking things down, playing with the stove, and leaving on gas jets. Being unable to hear Timmy rambling through the home at night reduced Mrs. S. to a state of anxiety; because she is deaf, Mrs. S. could only know Timmy's whereabouts by keeping an eye on him.

Aware that she could not continue to manage this situation indefinitely, except to the detriment of her health, the safety of her other children, and her ability to retain employment, Mrs. S. began to seek assistance from local social services agencies. When her initial efforts were unavailing, she wrote directly to the Governor of Kentucky. As a result of her letter, defendant Jim Odham, a social worker with the Kentucky Department for Human Resources (hereinafter "Department"), was assigned to her case. The assignment of Odham, however, is alleged to have been futile, for Mr. Odham refused to provide assistance in arranging medical control for Timmy's seizures or an out-of-home placement for him.

Subsequently, Mrs. S. determined that she should consult other agencies in reference to the case of her child. Consequently, in January, 1979, she took Timmy to a private treatment center for handicapped children, the Kentuckiana Children's Center. There, a Kentuckiana social worker began looking for an out-of-home placement for Timmy, while Mr. Odham allegedly continued to insist that no such placement existed and that none could be found.

In March, 1979, the Kentuckiana social worker established contact with Sharon and Hubert Howard, two licensed foster parents with a long, successful experience in dealing with difficult youngsters. The Howards have provided excellent care for over twenty children, many with severe problems requiring special attention. After successfully completing two series of training courses, the Howards were further certified as "specialized" foster parents, qualifying them to care for children with physical and emotional handicaps and developmental disabilities. The Department has considered the Howards' record to be excellent.

Once the Howards agreed and desired to care for Timmy, it seemed that the problems of Timmy and his family were resolved. The Department, however, it is alleged, willfully refused to place Timmy with the Howards. Despite their knowledge of the Howards' suitability and availability, the defendants continued to insist that no suitable placement for Timmy could be found. Knowing of the Howards' availability, and dismayed by the defendants' refusal to place Timmy with them, in May, 1979, Dolores S. initiated a dependency proceeding in the Juvenile Session of the Jefferson County District Court concerning her own son. The Juvenile Session Court ordered the defendants to prepare a home study evaluation of the Howard home in preparation for Timmy's placement there.

Relieved and delighted, Mrs. S. then travelled across the state to meet the Howards in their home. Her desire to have Timmy placed there was confirmed when she learned, upon arriving, that Mrs. Howard and her children had taken the trouble to begin learning sign language in order to communicate better with Timmy.

However, in late May or early June, the defendants sent the court not one, but two home studies. One concerned the Howard home, as ordered, and the other, unsolicited by the court, concerned another home, in which the parents were substantially older than the Howards and lacked any training in dealing with handicapped children. In conflict with the Howards' previous excellent record with the Department, the report concerning the Howards was negative. At the defendants' recommendation, therefore, the court placed Timmy with the other family in early June of 1979.

Timmy's placement with that family lasted approximately two months. During this time, the defendants are alleged to have failed to provide Timmy with necessary and appropriate services and treatment. On or about August 21, 1979, without notice to Mrs. S., Timmy was moved to a temporary foster home in Jefferson County while the defendants prepared to place him in an institution. Timmy's mother was not informed of the Department's intentions to institutionalize Timmy, or even that he had been returned to Jefferson County, until he had been there for more than a week.

On September 19, 1979, Timmy's case came before the Jefferson District Court for a case review. Upon the requests of Mrs. S. and Timmy's guardian *ad litem*, who is Timmy's next friend in this action, the court ordered his placement with the Howards. The defendants have since appealed this placement, arguing in state court that Timmy's future is wholly theirs to decide once the court had committed him to their care in June, 1979. The defendants, it is alleged, have since refused to provide Timmy with appropriate care and treatment or the Howards with foster care payments.

At several different stages of the ongoing effort by Mrs. S., by the Kentuckiana social worker, by the Howards, and by Timmy's court-appointed guardian *ad litem* to secure appropriate care and treatment for him, one party or another has sought to invoke the Department's administrative grievance procedures to protest departmental action. Dolores S. filed the first complaint, but the Department allegedly closed her file when she was unable to arrange for a sign language interpreter for an interview with the Department. Later, during the summer of 1979, the Howards, acting on Timmy's behalf, filed another grievance protesting the Department's alleged disregard for his welfare.

Defendants' response to the Howards' efforts allegedly took two forms. First, the defendants did not hear the complaint in a manner that was meaningful, in a proceeding that was fair, or at a place and time where the Howards and their counsel could, with reasonable convenience, attend. Second, in August, 1979, the defendants informed the Howards that they were to be discharged of their foster parent status, that their foster home would be closed, and that their foster care contract would be terminated. They told the Howards that these actions were being taken at the Howards' request and refused to alter their position when the Howards denied having made such requests. Subsequently, the Howards, upon the Department's suggestion, filed a second service complaint. On this complaint, too, allegedly, the Howards were denied fundamental fairness by the defendants, for they were not afforded a meaningful opportunity to be heard. This federal action was subsequently filed.

### B. SUBJECT MATTER JURISDICTION

The defendants initially dispute the subject matter jurisdiction of this Court. The threshold determination of jurisdiction depends not on the likelihood of the plaintiffs' success on the merits, but on whether the questions raised are too insubstantial for the Court's consideration. *Hagans v. Lavine*, 415 U.S. 528, 536–539, 94 S.Ct. 1372,

1378–1380, 39 L.Ed.2d 577 (1974). In this action, jurisdiction is based primarily upon 28 U.S.C. § 1343(3) and (4), the jurisdictional counterpart to 42 U.S.C. § 1983. The plaintiffs also contend that jurisdiction is further conferred by 28 U.S.C. § 1331(a), for the plaintiffs contend they have raised numerous federal questions and there is greater than $10,000 in controversy. The plaintiffs contend that the state claims are pendent to the federal claims, since they arise out of the same nucleus of operative facts. Since the Court deems that it clearly has subject matter jurisdiction under 28 U.S.C. § 1343, it is not necessary to address the issue of whether there is $10,000 in controversy. Since the allegations in the plaintiffs' complaint are deemed to be true, it is not necessary to consider whether the state claims are, in fact, pendent on the controverted federal claims.

The plaintiffs' damage claims arise from the defendants' contended failure to provide fundamentally fair administrative grievance procedures. The plaintiffs' complaint details their contention that the defendants have denied them ·a meaningful opportunity to be heard. Since the concept of a meaningful hearing in a meaningful manner is one of the cornerstones of our Anglo-American understanding of due process, *Goldberg v. Kelly*, 397 U.S. 254, 267–268, 90 S.Ct. 1011, 1020–1021, 25 L.Ed.2d 287 (1970) (collecting cases), the Court deems the plaintiffs' constitutional allegations of sufficient substance to confer jurisdiction through 28 U.S.C. § 1343(3). *Hagans v. Lavine, supra* 415 U.S. at 536–539, 94 S.Ct. at 1378–1380. Upon finding the constitutional claim to be substantial, the Court may hear pendent federal and state claims without determining whether the remaining federal claims in their own right are encompassed within § 1343. *Rosado v. Wyman*, 397 U.S. 397, 402–405, 90 S.Ct. 1207, 1212–1214, 25 L.Ed.2d 442 (1970).

It is irrelevant in this action whether, for jurisdictional purposes, § 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of a handicap, and the Developmentally Disabled Assistance and Bill of Rights Act, which requires that disabled persons be provided with appropriate care and treatment in the environment least restrictive of personal liberty, are exercises of the Congressional power to pass legislation providing for equal rights of citizens and civil rights. Amend. XIV, § 5. The jurisdiction of the plaintiffs' federal statutory claims accrues as pendent federal statutory claims to the constitutional claim.

The defendants possibly may have misconstrued the holding of *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). In *Chapman*, the Supreme Court did hold that § 1343 does not confer federal jurisdiction over claims based on the Social Security Act, since that Act is not a statute securing "equal rights" within § 1343(3) or "civil rights" within § 1343(4). *Id.* at 620–623, 99 S.Ct. at 1917–1918. However, as the dissenters there noted, *Chapman* does not abolish the doctrines of pendent and ancillary jurisdiction; if a Social Security Act claim is linked to a substantial constitutional question under the lenient standard of *Hagans v. Lavine, supra*, "even a welfare recipient with a federal statutory claim may sue in a federal court." *Id.* at 675, 99 S.Ct. at 1945 (Stewart, J., dissenting). The plaintiffs' constitutional claim is clearly substantial in the jurisdictional sense; therefore, the Court has subject matter jurisdiction.

## C. THE CONSTITUTIONAL CLAIM OF THE HOWARDS

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). " 'A case brought under the Civil Rights Act should not be dismissed at the pleading stage unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.' " *Azar v. Conley*, 456 F.2d 1382, 1391 (6th Cir.

1972) (citation omitted). Even where it appears unlikely that the plaintiffs will succeed on the merits, this Court will not dismiss a complaint where it appears the claimant should be entitled to offer evidence in support of his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ The defendants contend that the plaintiffs, Sharon and Hubert Howard, have failed to state a claim upon which relief may be granted; for the Howards lack a requisite life, liberty, or property interest on which to establish the underlying jurisdictional constitutional claim. The Howards counter that the allegations in the complaint raise several interests entitling them to protection under the due process clause of the Fourteenth Amendment. Particularly, the Howards contend that their interest in their certification as foster parents is a cognizable property interest and that the termination of their "right" to be foster parents is a cognizable liberty interest. Since the Court deems the Howards to have established that their decertification is a cognizable property interest under the Fourteenth Amendment, it is not necessary to address the plaintiffs' alternative liberty interest theory. The Court, *in no wise*, expresses any view on the issue of whether the plaintiffs have a cognizable liberty interest, and particularly on whether there is a natural "right" to be a foster parent. *Cf. Sherrard v. Owens*, 644 F.2d 542 (6th Cir., 1981) (*per curiam*) (no Fourteenth Amendment liberty interest in "a viable familial relationship" on the facts of the case). Although thoroughly briefed by the parties, the Court also expresses no view on the issue of what process is due. Such a determination would necessarily entail a factual investigation, an endeavor particularly inappropriate on a motion to dismiss.

During the early 1970's, the circle of interests sufficient to create "liberty" or "property" for purposes of due process was significantly widened beyond the common law core of personal interests. *See, e.g., Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (driver's license);

*Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (teacher's continued employment at state university pursuant to "implied" tenure); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (conditional freedom following parole); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (driver's license); *Goldberg v. Kelly, supra* 397 U.S. at 261–263, 90 S.Ct. at 1016–1018 (welfare benefits). In *Goldberg v. Kelly, supra* at 262 n. 8, 90 S.Ct. at 1017 n. 8, the Supreme Court recognized as entitlements interests founded neither on constitutional nor on common law claims of right, but on a state-fostered expectation, as opposed to a mere hope, which was derived "from an independent source such as state law," *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), or from "mutually explicit understandings." *Perry v. Sindermann, supra* 408 U.S. at 601, 92 S.Ct. at 2699. Determining the existence of these entitlements depended on the construction of the relevant statutes and of the pertinent understandings between the state government and the individuals, rather than on any balancing of interests; the existence of an entitlement turned not on "the 'weight' but [on] the *nature* of the interest at stake." *Board of Regents v. Roth, supra* 408 U.S. at 571, 92 S.Ct. at 2705 (emphasis in original). With this background, the question of whether state certification as a foster parent constitutes a property interest under the Fourteenth Amendment may be analyzed without resort to the metaphysical subtleties between "right" and "privilege" or between "license" and "certification." The guiding consideration is the pertinent understanding between the Department and the Howards.

As a child placement agency, the Department may place children in foster family homes under its supervision. KRS § 199.-660. The Howards, in order to become foster parents, were certified as such approximately five years ago. After successfully completing two series of training courses, the Howards were certified as "specialized" foster parents qualifying them to care for

children with physical and emotional handicaps and developmental disabilities. Without certification by the Department, the Howards may not continue their care for foster children, see KRS § 199.660, and indeed, but for the court-ordered placement of Timmy in their home, the Howards would be unable to continue to maintain foster children in their home. In sum, the Howards' certification interest is founded on the Department-fostered expectation derived from, at the very least, a mutually explicit understanding between the parties. This Court may not conclude that the Howards do not have a cognizable property interest under the due process clause of the Fourteenth Amendment, and, as such, they have established standing to assert an underlying constitutional claim. *Cf. Sherrard v. Owens, supra* (no liberty interest in relationship between temporary foster parents and children where foster parents "had only a six-month temporary license to conduct a foster family home").

### D. THE FEDERAL STATUTORY CLAIMS OF THE PLAINTIFFS

■ The defendants assert that this action should be dismissed because the plaintiffs may neither state a cause of action for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, nor under the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6001 *et seq.* The plaintiffs counter that a private cause of action for damages may be implied under both statutes. At the time the parties argued the motion to dismiss, the parties were without the benefit of the holding in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In light of the rule in *Maine v. Thiboutot, supra,* the Court is of the view that the substantial argument on whether there exist private causes of action under these welfare statutes is largely mooted. On the basis of *Maine v. Thiboutot, supra,* the plaintiffs have stated a cause of action for damages and equitable relief under 42 U.S.C. § 1983.

In *Maine v. Thiboutot, supra,* at 4, 100 S.Ct. at 2503, the Supreme Court held "that

the § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." In this action, the respondents, *Lionel and Joline Thiboutot,* successfully challenged Maine's interpretation of 42 U.S.C. § 602(a)(7). In affirming the state court's decision, the Court examined the face of the statute:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution *and laws,* shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (emphasis supplied). The Court reasoned that since Congress attached no modifiers to the phrase "and laws," the plain language of the statute undoubtedly embraces claims against persons alleged to have violated federal welfare statutes. *Id.* Since the phrase "and laws" is not read as limited to civil rights or equal protection laws, the plaintiffs have stated a cause of action, for the plaintiffs have demonstrated that this Court has subject matter jurisdiction and have placed the onus of their complaint on § 1983.

### E. SOVEREIGN IMMUNITY

■ The defendants contend that this action is barred because they enjoy sovereign immunity under the Eleventh Amendment. The defendants argue that since the plaintiffs allege only that they are proceeding against the defendants in their official capacity, they are immune from liability. The defendants further contend that the plaintiffs have failed to allege facts sufficient to show that the defendant acted outside the scope of their immunity.

The plaintiffs counter that it is clear from the facts of the complaint that the

plaintiffs are suing the defendants in their individual as well as in their official capacities. The plaintiffs also contend that the burden of proof is on the defendants, not the plaintiffs, to show that the defendants acted within the scope of their immunity. Regardless of the allocation of the burden of proof, the plaintiffs further argue that whether the defendants are clothed with immunity is an issue that would be inappropriately resolved on a motion to dismiss. All of the plaintiffs' contentions are valid.

The complaint indicates that the plaintiffs are suing the defendants as individuals acting *as individuals* under the color of state law both in their individual and, where applicable, in their official capacities. The allegations of place of employment are included not so as to imply that this suit is brought against the individuals acting *only* in their official capacities, but rather to help identify these persons and to support the plaintiffs' contention that these individuals were acting under color of state law. With respect to defendant, Peter Conn, the plaintiffs must have sued him in his individual capacity; for, at the time suit was filed, he was not a state official. The plaintiffs indicate that since they know of no other present official capacity, the plaintiffs must have intended to sue Mr. Conn in his individual capacity. Finally, while it is not necessary to examine the caption to glean the intention of the plaintiffs, the caption further evidences the plaintiffs' bona fides. The defendants' contention that the plaintiffs have sued them only in their official capacity is without merit.

■ In their individual capacities, state officials enjoy a qualified "good faith" immunity from damage liability under 42 U.S.C. § 1983. *Scheuer v. Rhodes, supra* 416 U.S. at 247–248, 94 S.Ct. at 1691–1692. The state officials are liable for damages, once a federally protected right has been violated, unless the defendants can prove that their actions are protected by the good faith defense. *Id.* The plaintiffs are not required to allege that the defendant acted in bad faith in order to state a claim for relief, but the burden is on the defendants

to plead good faith as an affirmative defense. *Gomez v. Toledo*, 446 U.S. 635, 639–640, 100 S.Ct. 1920, 1923–1924, 64 L.Ed.2d 572 (1980). Since the plaintiffs have made the two necessary allegations to support a claim under 42 U.S.C. § 1983, *i.e.*, (1) that persons have derived the plaintiffs of federal right, and (2) that these persons have acted under the color of state law, *Gomez v. Toledo, supra* at 640, 100 S.Ct. at 1924, the plaintiffs have made out a *prima facie* case, and the motion to dismiss has no basis on sovereign immunity grounds.

## F. THE ABSTENTION DOCTRINE

■ The defendants have urged this court to abstain, for reasons of comity, from deciding all of the claims in the complaint which concern the care and treatment of the plaintiff Timmy S. because the matter is pending in state court, and it is possible that the defendants might find themselves in the unfortunate position of having to choose which court to obey. While this Court is not unsympathetic to the defendants' position, this Court is compelled to follow the directive in *Hanna v. Toner*, 630 F.2d 442 (6th Cir. 1980), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 346 (1981). The Sixth Circuit "has squarely held that abstention from having claims of institutional violation of rights guaranteed by the U.S. Constitution is inappropriate and federal courts must have federal constitutional claims." *Id.* at 444. This Court is also of the view that the defendants' concerns are, perhaps, exaggerated; and even if not exaggerated, this Court believes the defendants may be accommodated without resorting to the drastic alternative of abstention from the exercise of federal jurisdiction.

## G. CLASS CERTIFICATION

While the Court recognizes that it should decide a pending motion for class certification as soon as practicable after the commencement of the action, the Court concludes that it must defer on the pending motion of the plaintiffs. Currently, there is simply an insufficient factual foundation

from which to draw necessary inferences for class action certification under the criteria of Rule 23 of the Federal Rules of Civil Procedure. Therefore, the plaintiffs will be permitted thirty days from this date to file affidavits and legal memoranda to supplement the record. The defendants will be granted a thirty day additional period to respond and to file their own appropriate affidavits and memoranda. If any party desires a hearing, that party is granted thirty days in which to file an appropriate motion.

An appropriate Order has been entered.