**TIMMY S., et al., Plaintiffs–Appellees,**

v.

**Grady STUMBO, et al., Defendants–Appellants.**

No. 89–6275.

United States Court of Appeals, Sixth Circuit.

Argued June 4, 1990.

Decided July 25, 1990.

Marcia R. Lowry, Christopher A. Hansen (argued), American Civil Liberties Union, Children's Rights Project, New York City, for Timmy S.

Laura K. Haller, David A. Friedman, Legal Aid Soc., Louisville, Ky., for Delores S.

William R. Brown, Tony Oppegard, Appalachian Research & Defense Fund of Kentucky, Hazard, Ky., for Sharon Howard, Hubert Howard.

Ryan M. Halloran, Gen. Counsel, William K. Moore, Staff Atty., Stanley A. Stratford, Asst. Gen. Counsel, E.D. Klatte, Staff Atty., Trisha Zeller James, J. Gregory Burton (argued), Cabinet for Human Resources, Office of the Counsel, Frankfort, Ky., for defendants-appellants.

Before KEITH and NORRIS, Circuit Judges, and DUGGAN, District Judge.*

KEITH, Circuit Judge.

Defendants, officials and agents of the Kentucky Department for Human Resources (the "Department"), appeal from the district court's September 7, 1989 order enjoining the Department from excluding foster parents, such as plaintiffs Sharon and Hubert Howard (the "Howards"), from its administrative hearing procedures pursuant to Title IV of the Social Security Act, the Adoption Assistance and Child Welfare Act of 1980 (the "Act"), Pub.L. 96–272, 42 U.S.C. §§ 620–628, 42 U.S.C. §§ 670–676, and 45 C.F.R. 205.10. For the reasons set forth below, we AFFIRM.

## I.

### A.

When the complaint was filed on February 19, 1980, plaintiff Timmy S. was seven years old.[1] He was mentally retarded and emotionally disturbed. His mother, Delores S., was unable to hear or speak. Because Delores S. and her son were disabled, it had become increasingly difficult for Delores S. to properly care for Timmy.[2] When she sought social services, the Department failed to arrange medical treatment for Timmy's seizures or out-of-home placement. The Department explained that no such placement could be found. *See Timmy S. v. Stumbo,* 537 F.Supp. 39, 41 (E.D.Ky.1981).

In January 1979, Delores S. approached the Kentuckiana Children's Center, a private treatment center, for assistance. A social worker contacted the Howards who were licensed foster parents certified by the Department to care for children with behavioral problems like Timmy's. The Department was aware that the Howards were willing to care for Timmy. The Department, nevertheless, insisted that a suitable placement for Timmy could not be found.

---

*The Honorable Patrick J. Duggan, U.S. District Judge for the Eastern District of Michigan, sitting by designation.

1. We will rely on the district court's statement of facts in *Timmy S. v. Stumbo,* 537 F.Supp. 39, 41 (E.D.Ky.1981).

2. During this period, Timmy often wandered through his family home at night, knocking down objects, playing with the stove, and leaving on gas jets. *Timmy S. v. Stumbo,* 537 F.Supp. 39, 41 (E.D.Ky.1981).

Delores S. instituted a dependency petition in Kentucky District Court which ordered the Department to conduct a study of the Howards' home to determine its suitability for Timmy S. In May 1979, the Department submitted a negative evaluation of the Howards, in substantial contrast to the consistently excellent evaluations that previously had been issued regarding them. Additionally, the Department submitted a positive evaluation of another family which was not certified to care for children with special needs. In June 1979, instead of placing Timmy S. with the Howards, the Kentucky District Court placed him with the other family.

During the two months of this placement, Timmy did not receive adequate services. As a result, Delores S. filed an administrative grievance protesting the Department's failure to provide adequate services. The Howards filed a similar grievance on Timmy's behalf. The Department did not provide Delores S. or the Howards with a meaningful hearing on those grievances. Instead, the Department notified the Howards that, at their request, they were being decertified as foster parents. When the Howards protested that they had not requested decertification, the Department, nevertheless, decertified them. The Howards believe that the Department's actions were in retaliation for the administrative grievance that they filed. Although the Howards requested an administrative hearing, the Department refused to provide an administrative hearing on the Howards' complaint that their decertification was wrongful.

In September 1979, the Kentucky District Court ordered Timmy to be placed with the Howards. The Howards functioned as Timmy S.'s foster parents, pursuant to the order, until the present action was instituted on February 19, 1980. During this period, the Department did not provide the Howards with the funds or services to which they were entitled as foster parents.

**3.** On two occasions, the Department supplemented the record to advise the court of changes in procedures for administrative hear-

## B.

Plaintiffs filed this action seeking declaratory and injunctive relief on behalf of themselves and all others similarly situated to redress the Department's failure to afford administrative hearings to persons contesting or appealing the Department's denial, reduction, termination or failure to provide state- and federally-secured services, benefits and entitlements. Named plaintiffs also sought damages for violation of their due process rights.

On March 14, 1980, the Department moved to dismiss the complaint arguing, in pertinent part, that foster parents do not have a right to a due process hearing. The district court denied the Department's motion to dismiss. *Timmy S. v. Stumbo*, 537 F.Supp. 39 (E.D.Ky.1980).

On June 3, 1985, plaintiffs moved to amend the complaint by adding several named children and foster parents as plaintiffs. At the same time, plaintiffs renewed their motion for class certification. The district court denied these motions on August 30, 1988. Finding class certification unnecessary, the court reasoned that "[i]f plaintiffs succeed on their claims and are granted injunctive and declaratory relief, the defects of the alleged unconstitutional procedures challenged by the proposed class would be remedied." *Timmy S. v. Cowherd*, No. 80–24, slip op. at 2 (E.D.Ky. Aug. 30, 1988) (Joint Appendix at 357).

On April 11, 1986, plaintiffs moved for partial summary judgment, arguing, in part, that foster parents have a right to due process hearings under the Fourteenth Amendment and the Act. In opposition to the plaintiffs' motion, the Department submitted its administrative hearing procedures and argued that foster parents do not have a due process right to a hearing, therefore, administrative hearings are not permitted on the basis of the foster parents' complaints.[3] On September 7, 1989, the district court granted plaintiffs' motion for partial summary judgment insofar as it

ings. With each submission, the Department asserted that foster parents could not invoke the administrative hearing procedures.

sought to declare that foster parents have a due process right to an administrative hearing pursuant to the Act and 45 C.F.R. § 205.10.[4] This issue is the subject of the Department's present appeal which was timely filed on October 5, 1989.

## II.

As a preliminary matter, the express language of 28 U.S.C. § 1292(a)(1) confers jurisdiction to review the district court's grant of the injunction. Since the district court enjoined the Department from excluding foster parents from its hearing procedure pursuant to the Act and 45 C.F.R. § 205.10, we will limit our review to an analysis of the statutory rights afforded foster parents. We need not reach the constitutional arguments addressed by both parties on appeal.

## A.

■ On appeal, the Department argues that the Act does not create enforceable rights in foster parents. The Howards counter that the plain language of the Act requires the Department to have a plan that "provides for granting an opportunity for a fair hearing before the State agency to *any individual* whose claim for benefits available pursuant to this part is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 671(a)(12) (emphasis added). Under the regulations, the Department's plan must contain a provision incorporating "the procedures and requirements in" 45 C.F.R. § 205.10, the regulation that provides for Aid to Families with Dependent Children ("AFDC") fair hearings. 45 C.F.R. § 1355.30. The district court held that "[a]s the Howards are 'any individual' under 42 U.S.C. § 671(a)(12), they can seek an injunction to force the Department to comply with the funding requirements of that statute." *Timmy S. v. Stumbo*, No. 80-24, slip op. at 4 (E.D.Ky. Sept. 7, 1989)

(Joint Appendix at 426). We agree with the district court's holding and likewise enjoin the Department from excluding foster parents from agency hearings.

The legislative history of the Act refers to Congress's intention to reaffirm the right of foster parents to administrative hearings. *See, e.g.,* H.R.Rep. No. 136, 96th Cong., 2nd Sess. 6, 17, 45 ("[A] fair hearing [must] be provided for any parent, foster parent, [or] guardian....."); S.Rep. No. 336, 96th Cong., 2nd Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 1448, 1453, 1461, 1467 ([P]rocedures [must be adopted] to protect the rights of natural parents, children, or foster parents....") The language of the Act, as passed by the House of Representatives, explicitly provided that foster parents had a right to hearings. H.R. 3434, 96th Cong., 1st Sess., 125 Cong.Rec. 22,122 (1979). Although the language was changed in the final version of the Act, the conference committee report indicates that the Act's language, as adopted, was seen as identical in substance to that passed by the House and to the law in existence prior to the Act's passage. H.R.Conf.Rep. No. 900, 96th Cong., 2nd Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 1561, 1565. The district court, therefore, properly concluded that the Department's administrative hearing procedures must be made available to foster parents.

The relevant benefits contemplated under the Act include foster care maintenance payments to licensed foster parents [5] and training. 42 U.S.C. § 675(4); 45 C.F.R. § 1356.60. We do not construe the Act to guarantee intangible benefits such as the pleasure derived from helping troubled children "work through their problems so that they can return home or be adopted." Appellee's Brief at 12. *Cf. Scrivner v. Andrews*, 816 F.2d 261, 263–64 (6th Cir.1987) (concluding that the Act does not create a

---

**4.** In addition, the district court denied plaintiffs' motion to require the Department to notify unsuccessful grievants that they have a right to appeal to the court system. Plaintiffs have not appealed from this portion of the order. The district court declined to rule upon the plaintiffs' constitutional claims.

**5.** Foster care maintenance payments include payments for food, shelter and other necessities provided for children placed outside of the home. *See* 42 U.S.C. § 675(4).

right to "meaningful visitation" enforceable under § 1983). The Howards, however, are entitled to a fair hearing for the denial of tangible benefits, such as the Department's failure to compensate them for the care they provided Timmy from September 1979 to February 1980 as a result of the allegedly wrongful decertification.

### B.

The Howards also have a private right of action to enforce the Act. *See Lynch v. Dukakis*, 719 F.2d 504, 511 (1st Cir.1983) (holding that a class consisting of "all children under the jurisdiction of Massachusetts foster family home care system, and all members of the children's natural and *foster* families" could maintain a § 1983 action for prospective injunctive relief where it was alleged that the state had not complied with a statutorily mandated procedure) (emphasis added); *see also Lesher v. Lavrich*, 784 F.2d 193, 197 (6th Cir.1986) ("It may be reasonable to read the Adoption Assistance Act to permit parents and children affected by the programs it funds to sue to force those programs to comply with federal funding requirements ..."). On this appeal, the Howards seek only prospective injunctive relief.[6] Since the Act affords the Howards a right to an administrative hearing, they have a private cause of action under § 1983 to enforce such right by seeking prospective injunctive relief.

### C.

The Department next asserts that in issuing a prospective injunction based on 42 U.S.C. § 671(a)(12), the district court erred by according the Act retroactive force as the Act had not been adopted at the time the Howards' cause of action arose. The Howards were decertified on August 1, 1979; they filed suit on February 19, 1980. The Act was not enacted until June 17, 1980. The Department, therefore, argues that the district court imposed statutory obligations on the state for actions which occurred prior to the passage of the Act. After careful review of the Act's legislative history, we conclude that the district court did not retroactively apply the statutory obligation.

Prior to 1980, federal foster care benefits were provided pursuant to Titles IV–A and XX of the Social Security Act. When the Howards cause of action arose, Title IV–A required the state plan to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children [Title IV–A] is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 602(a)(4). The implementing regulation was 45 C.F.R. § 205.10. Title XX had a similar statute, 42 U.S.C. § 1397 *et seq.*, and its implementing regulation, 45 C.F.R. § 228.14, simply referred to 45 C.F.R. § 205.10. The plaintiffs' complaint specifically cited Titles IV–A and XX and the relevant regulation, 45 C.F.R. § 205.10.

In 1980, Congress passed the Act, P.L. 96–272, which transferred the foster care program to Titles IV–B and IV–E of the Social Security Act. 42 U.S.C. §§ 620–628; 42 U.S.C. §§ 670–676. The language of 42 U.S.C. § 671(a)(12) is virtually identical to its predecessor statute, 42 U.S.C. § 602(a)(4). Furthermore, Congress explicitly said that "hearing procedures under the new IV–E program would be the same as under current IV–A law." H.R.Conf. Rep. 900, 96th Cong. 45, *reprinted in* 1980 U.S.Code Cong. & Admin.News 1561, 1565. Thus, when regulations were developed to implement the Act, they, like their predecessors, referred to 45 C.F.R. § 205.10. 45 C.F.R. § 1355.30(k). We, therefore, conclude that the district court did not retroactively apply obligations to the Department because the passage of the Act on June 17,

---

**6.** The complaint prays for a declaration that the Department unlawfully decertified the Howards and damages which constitute retrospective relief. The district court has not yet ruled on either request. These issues, therefore, are not properly before this Court. We note, however, that we have held that damages are not available in a § 1983 action alleging a violation of the Act. *Scrivner v. Andrews*, 816 F.2d 261, 264 (6th Cir.1987); *Lesher v. Lavrich*, 784 F.2d 193, 197–98 (6th Cir.1986).

1980 did not alter foster parents' entitlement to administrative hearings pursuant to 45 C.F.R. § 205.10.

### III.

The Act grants foster parents an enforceable right to an administrative hearing. We, therefore, conclude that the district court properly enjoined the Department from excluding foster parents from its administrative hearing procedures. Accordingly, we AFFIRM the judgment of the Honorable Eugene E. Siler of the United States District Court for the Eastern District of Kentucky.