IN RE CYNTHIA A.*
(4216)

BORDEN, DALY and BIELUCH, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Reporter of Judicial Decisions

Argued June 12—decision released August 26, 1986

*Barbara J. Ruhe,* for the appellant (respondent mother).

*Judith Merrill Earl,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, *Robert W. Garvey,* assistant attorney general, and *Kim Knox,* law student intern, for the appellee (petitioner).

*Brian Thomas Walsh,* for the appellee (father).

DALY, J. The respondent mother has appealed from the judgment committing her three year old daughter, Cynthia, to the temporary custody of the commissioner of the department of children and youth services (DCYS), pursuant to General Statutes § 46b-129 (d),

for the maximum period of eighteen months for place-
ment with the child's paternal grandmother who lived
at the time in Puerto Rico.[1]

On January 30, 1985, following a plea of nolo con-
tendere, the trial court found that Cynthia had been
neglected by her mother (respondent) and father.[2] The
state claimed that, on September 1, 1984, the child had
suffered burns to 55 percent of her body as a result
of being immersed in boiling hot water by a male com-
panion of the respondent. The male companion is not
the natural father of Cynthia but is the father of the
respondent's two other, younger children. As a result
of this incident, the male companion was charged with
the offense of injury or risk of injury to a minor.

From the time of Cynthia's birth in July, 1981, until
November, 1983, the maternal grandmother greatly
assisted in the care of Cynthia, as the respondent and
child lived in the home of the maternal grandmother
during that time. On two occasions, in 1982 for two
months, and in 1983-84 for five months, the respon-
dent sent Cynthia to Puerto Rico to stay with the child's
father and paternal grandparents. Upon learning of the
child's injury, the paternal grandmother left her home
and family in Puerto Rico and came to Connecticut to
be with the child. The paternal grandmother visited
Cynthia in the hospital, nursed and cared for her upon
the child's release, and brought her to the hospital for
subsequent treatments. During this time, the paternal
grandmother was living in New Britain where the child
often stayed or visited with her. During the thirty-seven
month period after Cynthia's birth until her hospitali-

---

[1] The court also noted its "expectations" that the grandmother return
the child to Connecticut at least once a year for a period of at least three
weeks, that DCYS make available to the mother support services for reunifi-
cation with the child, and that, if the mother visits Puerto Rico, extremely
liberal visitation be granted her with the child.

[2] Cynthia's natural father resides in Puerto Rico.

zation, the respondent had full responsiblity for the care of her daughter for only four months.

Neither the respondent nor the father contested the neglect charges. At the conclusion of the dispositional phase of the proceedings, the trial court committed the child to the custody of DCYS for eighteen months for placement with the paternal grandmother, currently residing in Puerto Rico.

In her appeal, the respondent claims that the trial court erred as follows: (1) in ruling that the petitioner established by a fair preponderance of the evidence that commitment of the minor child to DCYS is in the child's best interests; (2) in denying the respondent's motion to dismiss for the failure of the petitioner to establish by a fair preponderance of the evidence that commitment of the minor child to DCYS is in the child's best interests; (3) in finding that the respondent was not denied her due process rights by the admission of hearsay testimony through the social study summary of facts and the summary of the DCYS worker; (4) in failing to grant the respondent's motion for a psychological evaluation of a nonparty pursuant to General Statutes § 17-38 (a); (5) in denying the respondent's motion for continuance of the dispositional hearing pending the resolution of criminal charges pending against the respondent's male companion, so as to permit him to testify at the dispositional hearing; (6) in ordering the minor child to be committed to DCYS with placement with the paternal grandmother in Puerto Rico absent efforts to reunify the child and her mother; (7) in terminating de facto the respondent's parental rights by granting the commitment of the child to DCYS for placement in Puerto Rico with the paternal grandmother; and (8) in refusing to grant an administrative hearing in accordance with General Statutes § 46b-129 (d) (3) relative to the out-of-state placement.

I

"After a judicial determination that a child is 'uncared for, neglected or dependent' the Superior Court has available three possible options from which to choose regarding custody of that child: (1) to 'commit [the child] to the commissioner of children and youth services'; (2) to 'vest such child's or youth's care and personal custody' in a third party until the child reaches the age of eighteen; or (3) to permit the natural parent to retain custody and guardianship of the child, with or without protective supervision by DCYS. General Statutes § 46b-129 (d)." (Footnote omitted.) *In re Juvenile Appeal (85-BC),* 195 Conn. 344, 353, 488 A.2d 790 (1985).

The respondent contends that the state failed to substantiate the child's commitment to DCYS by a fair preponderance of the evidence. " 'We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' " *Knight* v. *Breckheimer,* 3 Conn. App. 487, 490, 489 A.2d 1066 (1985), quoting *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222, 435 A.2d 24 (1980). " 'We cannot retry the facts or pass upon the credibility of the witnesses.' " *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 220. "It is well established that the trial court is in the best position to determine the credibility of witnesses and the weight to be accorded their testimony." *Colonial Bank of Waterbury* v. *Forish,* 6 Conn. App. 289, 291, 505 A.2d 11 (1986); Holden & Daly, Connecticut Evidence § 125 (a). "In determining whether the trial court could reasonably conclude as it did on the evidence before

it, every reasonable presumption should be given in favor of the correctness of its action." *Leo* v. *Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985).

There was evidence before the trial court that the respondent had cared for Cynthia for only four out of the thirty-seven months prior to her hospitalization for the burn injury. There was ample evidence that the paternal grandmother has exhibited a strong sense of responsibility toward the child and could continue to provide her with a stable and loving environment. The paternal grandmother has maintained a continuous bond with the child through extended visits. She left Puerto Rico, regularly visited Cynthia in the hospital and cared for her needs after her release. The paternal grandmother is an experienced caretaker, having raised a family of her own.

On the other hand, the respondent must bear the responsibility of caring for her two children by her male companion, the alleged abuser of Cynthia. If the child remained with the respondent, the male companion would inevitably come in contact with the abused child. The psychologist, the DCYS social worker and a counselor all were in accord that the DCYS placement with the paternal grandmother in Puerto Rico would be in the best interests of the child. Our review of the record reveals that the state satisfied its burden of proof by a fair preponderance of the evidence. The trial court's conclusion as to the placement of the child with DCYS was, therefore, legally correct and factually supported. See *In re Rebecca W.,* 8 Conn. App. 92, 510 A.2d 1017 (1986).

## II

The respondent claims that the trial court erred in failing to grant her motion for dismissal. Practice Book § 302 provides in relevant part: "If, on the trial of any issue of fact in a civil action tried to the court, the plain-

tiff has produced his evidence and rested his cause, the respondent may move for judgment of dismissal, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. . . . "

If we assume, arguendo, that the motion was appropriate in a dispositional hearing of neglect and timely even though made at the end of the entire testimony, a judgment of dismissal is proper when the trier cannot make a reasonable finding in favor of the plaintiff based on the evidence produced. *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 609, 440 A.2d 810 (1981). "The evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to him, and every reasonable inference is to be drawn in his favor." Id., 609–10. Treating the evidence in that manner, we conclude that the denial of the judgment of dismissal was proper because the evidence not only satisfied the prima facie requirement but also met the state's burden of proof by a fair preponderance.

## III

The respondent claims that she was denied her due process rights since extensive hearsay evidence was admitted through the social study summary of facts and the testimony of the DCYS social worker. It should be noted at the outset that in juvenile proceedings certain procedural informalities are constitutionally permissible, allowing, for example, the liberal interpretation of the formal rules of evidence as long as due process standards are observed. *In re Juvenile Appeal (85-2),* 3 Conn. App. 184, 190, 485 A.2d 1362 (1985). More importantly, the respondent did not object at the trial to any of the evidence which she challenges on appeal. Indeed, she introduced much of the evidence through cross-examination of the social worker. She can hardly be heard now to complain of its admission.

## IV

The trial court denied the respondent's motion requesting that her male friend be ordered to submit to a psychological examination pursuant to General Statutes § 17-38a.[3] By employing the word "may" as opposed to the mandatory "shall," the statute calls upon the court's discretion. The trial court's action which involves the exercise of judicial discretion will not be disturbed unless there is a clear abuse of that discretion. *In re David E.,* 4 Conn. App. 653, 656, 496 A.2d 229 (1985). We determine that there was no abuse of discretion because the male friend was facing, as a result of the burn incident, a criminal charge of injury or risk of injury to a minor child.

## V

The respondent claims that the trial court erred in refusing to continue the matter until the criminal case against her male friend was resolved so that he could testify at the dispositional hearing. A motion for continuance falls within the purview of the trial court's discretion which will not be upset absent a showing of clear abuse of that discretion. *State* v. *Beckenbach,* 198 Conn. 43, 47, 501 A.2d 752 (1985). "Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made." *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 538, 429 A.2d 801 (1980); *Rose* v. *Messier,* 1 Conn. App. 563, 565, 474 A.2d 100 (1984). The right to a continuance is not absolute and no mechanical tests come into play for determining whether the denial of a continuance violates due process standards. " 'The answer must be found in the cir-

---

[3] General Statutes § 17-38a (f) provides in pertinent part: "In proceedings in the superior court under this section, (1) the court may order the child, the parents, the guardian, or other persons accused by a competent witness with abusing the child, to be examined by one or more competent physicians, psychiatrists or psychologists appointed by the court . . . . ''

cumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *State* v. *Beckenbach,* supra, 47–48; *State* v. *McKnight,* 191 Conn. 564, 576, 469 A.2d 397 (1983); *In re Juvenile Appeal (85-2),* supra, 189.

Time is of the essence in child custody cases. *State* v. *Anonymous,* 179 Conn. 155, 171, 425 A.2d 939 (1979). The failure to continue a matter until the father's unscheduled release date from prison was upheld in a termination of parental rights case. *In re Juvenile Appeal (Docket No. 10155),* 187 Conn. 431, 439, 446 A.2d 808 (1982). Here, the male friend's criminal disposition date was speculative. Hence, there was no error in denying the request for a continuance.

## VI

In support of her claim that DCYS failed to make reasonable efforts to reunite the family, the respondent cites the Adoption Assistance and Child Welfare Act of 1980.[4] The act, however, is an appropriations act and does not apply to individual actions or judicial findings as the respondent argues, but merely sets forth general guidelines for a state's continued eligibility to receive funds for foster care maintenance. 42 U.S.C.

---

[4] 42 U.S.C. § 672 (a) of the Adoption Assistance and Child Welfare Act of 1980 provides in pertinent part: "Each State with a plan approved under this part shall make foster care maintenance payments . . . with respect to a child who would meet the requirements of section 606 (a) of this title or of section 607 of this title . . . if—(1) the removal from the home occurred pursuant to a voluntary placement agreement entered into by the child's parent or legal guardian, or was the result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child and . . . that reasonable efforts of the type described in section 671 (a) (15) of this title have been made . . . ."

42 U.S.C. § 671 provides in pertinent part: "In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which—(15) . . . provides that, in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home . . . ."

§§ 601, 627, and 670–672. The respondent's claim lacks merit and need not be considered further.

## VII

The respondent next claims that the commitment of Cynthia to DCYS and her placement with the paternal grandmother in Puerto Rico constituted a de facto termination of parental rights. " 'It is important to note . . . that the ultimate standard underlying the whole statutory scheme regulating child welfare is the "best interests of the child." The public policy of this state as enunciated in General Statutes § 17-38a (a) is "[t]o protect children whose health and welfare may be adversely affected through injury and neglect . . . to provide a temporary or permanent nurturing and safe environment for children when necessary . . . . " ' " *In re Juvenile Appeal (Docket No. 10155),* supra. " 'This furthers the express public policy of this state to provide all of its children a safe, stable nurturing environment.' " (Citation omitted.) Id., 440.

We find, under these circumstances, that the court did not err in concluding that the respondent is currently unable to provide the protection her daughter needs and that the child's best interests therefore require placing her in the custody of DCYS. Although the placement of the child with the paternal grandmother was phrased as part of the court order, the actual commitment of the child pursuant to General Statutes § 54-129 was to the commissioner. The trial court's placement of the child with the paternal grandmother was, in legal effect, a suggestion to the commissioner that he, in his discretion and in the child's best interests, so place the child. The respondent's parental rights have not been terminated de jure or de facto by the placement with the paternal grandmother in Puerto Rico. Connecticut still retains jurisdiction of the child under the Interstate Compact on the Place-

ment of Children, General Statutes § 17-81a, article V (a), which provides in relevant part: "The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state . . . ."

## VIII

General Statutes § 46b-129 (d) provides in pertinent part: "Said commissioner may place any child or youth so committed to him in a suitable foster home or in the home of a person related by blood to such child or youth or in a licensed child-caring institution or in the care and custody of any accredited, licensed or approved child-caring agency, within or without the state, provided a child shall not be *placed outside the state* except for good cause *and unless* the parents of such child are notified in advance of such placement and given an opportunity to be heard . . . ." (Emphasis added.)

The respondent claims that, in order for the child to be placed in Puerto Rico, she was entitled to a separate administrative hearing. The respondent was notified on the first date of the dispositional hearing that it was the position of DCYS that the child be placed in Puerto Rico with the paternal grandmother. The case having been litigated on that basis, the respondent had an opportunity to be heard in this regard and to participate in the hearing as a witness. Under these circumstances, no separate hearing was required.

There is no error.

In this opinion the other judges concurred.