## Marilyn W. v. Children and Youth Services of Allegheny County

*Eileen D. Yacknin,* for plaintiffs.
*James A. Esler,* for defendant.

WETTICK, *A.J.,* April 7, 1989 — This is a lawsuit brought by a mother on her own behalf and on behalf of her three minor children for relief based on deprivations of rights allegedly secured by the federal and state constitutions, federal and state legislation, and regulations promulgated pursuant to this legislation. Initially, plaintiff sought injunctive, declaratory and monetary relief.

Because of subsequent developments in dependency proceedings involving plaintiff and her three children, plaintiff has withdrawn her claims for declaratory and injunctive relief. Consequently, this lawsuit is now limited for her claims for damages.

Each defendant has filed identical preliminary objections in the nature of a demurrer to each of plaintiff's claims for monetary relief. These preliminary objections are the subject of this opinion and order of court.[1]

1. While this case was instituted in 1984, this member of the court did not become involved with the lawsuit until the latter part of 1987. Arguments on the preliminary objections were held in December 1987 and the parties were given 60 additional days in which to file briefs on the issues raised at the oral argument. Shortly after the briefs were filed, the U.S. Supreme Court agreed to consider the question of whether damages may be awarded to an abused child under 42 U.S.C. §1983 where the sole basis of the claim is the state's failure to protect the child. This court waited for the Supreme Court

## I

Plaintiff is the mother of three minor children whom this court found to be dependent and placed into foster care. The mother's damage claims are based primarily on the Federal Adoption and Assistance Welfare Act of 1980, 42 U.S.C. §620 et seq. The major purpose of this legislation is to minimize the time which children who have been removed from their natural parents remain in temporary care through active and systematic monitoring of children in the foster care system. The act requires each state welfare agency to develop a plan for serving children in foster care and their parents that meets the requirements of the legislation and the regulations promulgated pursuant to this legislation. In order to comply with federal standards, the state foster care plan must provide for a written case plan for each child, a case review system to monitor the progress of the case plan, regular visitation between the child and the natural parent, the development of prevention and reunification services to avoid the unnecessary placement of children in foster care and to reunite children with their families, and payments for adoption assistance. The Adoption Assistance and Child Welfare Act of 1980 is appropriations legislation — no state is required to comply with its provisions. However, substantial

decision before deciding the merits of defendants' preliminary objections because of the possibility that the Supreme Court opinion would have a bearing on plaintiff's claims. On February 22, 1989, in *DeShaney v. Winnebago County Department of Social Service*, ____ U.S. ____ , 109 S.Ct. 998, the U.S. Supreme Court held that the Constitution imposes no duty on a state to protect a child from an abusive parent. The court's opinion offers no guidance to this court with respect to the merits of defendants' preliminary objections.

federal funds are available to those states which develop and maintain plans that comply with the federal requirements.[2]

The only remedy for non-compliance set forth in the Adoption Assistance and Child Welfare Act is for the federal government to reduce or terminate the payment of federal funds to the state. The act is silent as to whether a private action may be based on this legislation.

It is very possible that a natural parent or a foster child may bring a class action based on this legislation to compel a state receiving federal funds to comply with the federal requirements or, alternatively, to enjoin the state from accepting additional federal funds until it develops and administers a foster care program in compliance with federal requirements. The purpose of the federal legislation it to compel the states to develop foster care programs that meet various minimum standards. Consequently, such a remedy is consistent with the underlying purposes of the legislative scheme. Furthermore, a lawsuit which seeks this relief does not interfere with the manner in which the state juvenile courts resolve issues involving a particular child's treatment and care. See *Lynch v. Dukakis,* 719 F.2d 504 (1st Cir. 1983).

But plaintiff in the present case seeks only dam-

2. The Adoption Assistance and Child Welfare Act of 1980 is an amendment to Title IV of the Social Security Act. This act expands Title IV, which previously dealt only with families who qualify for AFDC assistance, by extending the scope of its coverage to each child receiving foster care under the supervision of the state. Detailed descriptions of the 1980 legislation and its relationship to Title IV are found in *In re Del A. v. Edwards,* 855 F.2d 1148, 1149-50 (5th Cir. 1988); *In re Scott County Master Docket,* 672 F. Supp. 1152, 1200-3 (D. Minn. 1987); and *L.J. by and through Darr v. Massinga,* 838 F.2d 118, 122-3 (4th Cir. 1988).

ages for the alleged mismanagement of her case. She is not seeking to compel the Pennsylvania Department of Public Welfare or Children and Youth Services of Allegheny County to develop a system for case management, delivery of services, and placemént review that complies with federal requirements. In her complaint, plaintiff does not claim that either the Department of Public Welfare or Children and Youth Services has failed to develop the standards and procedures mandated by federal law. In fact, plaintiff's complaint states that the Pennsylvania Department of Public Welfare has adopted regulations regarding the administration of county children and youth services' social service programs to achieve compliance with the federal legislation, that the Secretary of the Department of Health and Human Services has approved the Pennsylvania plan, and that the Pennsylvania Department of Public Welfare has completed a self-certification procedure signifying the commonwealth's own determination of its compliance.[3]

Furthermore, plaintiff does not contend either that Allegheny County Children and Youth Services has failed to develop a foster care program consistent with these regulations or that there are systematic deficiencies in the operation of its foster care program. Plaintiff's damage claim is based solely on

3. The regulations that the Department of Public Welfare adopted to achieve compliance with federal legislation require, inter alia, that each county children and youth services agency provide services designed to reunite children and their families when children are in temporary placement and that an opportunity for visits between a child and the parents be provided at least once every two weeks, with the visits to be scheduled at a time and place convenient to all parties and at a location that will permit natural interaction.

the manner in which defendants dealt with her individual case.

Most of plaintiff's allegations concern the failure to provide more frequent visits, visits of a longer duration, and visits at more appropriate locations. However, plaintiff's complaint acknowledges that plaintiff was given the opportunity for visits at least once every two weeks (except for periods of time that visits were barred by order of court).

Plaintiff also raises allegations concerning defendant's failure to provide sufficient social services and appropriate case review. While plaintiff's complaint acknowledges that Children and Youth Services offered her a parent training program, plaintiff complains of the failure to provide additional services at other times. Also, while plaintiff's complaint acknowledges that Children and Youth Services continuously updated its placement plans, plaintiff complains of the decisions concerning placement that were reached and of the lack of an opportunity for meaningful participation.

For three reasons, we find that plaintiff may not maintain this action for money damages based upon the Federal Adoption Assistance and Child Welfare Act.

First, we conclude that neither a natural parent nor a foster child may seek money damages for non-compliance with this legislation. The purpose of this legislation is to encourage states to develop systems for case management, delivery of services, and placement review of children in placement which comply with federal standards. It is hoped that through the improved delivery of services, children in foster care will find permanency within a reasonable time through a return to the natural parent or placement in an adoptive home. The only

benefit that the act intends to confer upon the natural parents and the children in foster care is the availability of improved services. The act did not create any monetary benefits for the class of persons for whom this legislation was enacted.

Our second reason for finding that plaintiff's complaint fails to state a cause of action is based upon the nature of the alleged violations of federal law. Plaintiff's claim is not based on an alleged widespread failure of the Department of Public Welfare or the Allegheny County Children and Youth Services Agency to follow the mandates of the Adoption Assistance and Child Welfare Act. Also there is no claim that defendants utilized procedures and standards that were on their face out of compliance with either federal law or state regulations imposed to achieve compliance with federal law. Plaintiff's claim is based solely on the manner in which the various defendants dealt with her individual case. After a state has developed a foster care system that complies with federal law, there will still be individual cases that are mismanaged. We do not believe that federal legislation, designed to encourage states to develop a system for servicing foster children and their families that meets various federal standards, was intended to create remedies for the mismanagement of individual cases.[4]

4. In 42 U.S.C. §671(b), Congress recognized that some mismanagement of individual cases will occur in states which have developed acceptable plans for serving foster children and their families. This subsection provides that federal funding may be terminated if the state's foster care plan no longer meets federal standards but that funding may not be terminated for deficiencies in the administration of the plan unless there is "a substantial failure to comply with the provisions of the plan."

Third, plaintiff's claims arise out of activities of Children and Youth Services occurring while the children were supervised by the Juvenile Court pursuant to a dependency order. The case would have been regularly reviewed by the court in accordance with state regulations and the practices of the juvenile court. Throughout the dependency proceedings the mother had the ability to make requests to the juvenile court regarding each of the matters of which she complains in her complaint. (In fact, the allegations in plaintiff's complaint show that the juvenile court regularly dealt with visitation issues.) The juvenile court had the authority (if it wished) to respond to the mother's requests by ordering a visitation plan that the mother desired, by compelling Children and Youth Services to provide additional services to the mother as specified by the court and by structuring case planning in accordance with the mother's desires. See *In re Lowry,* 506 Pa. 121, 484 A.2d 383 (1984). The mother does not claim that defendants failed to comply with any court orders regarding these matters, so this is not a case in which defendants failed to provide court-ordered services.

Any damage claim based on actions taken by Children and Youth Services that were consistent with court orders entered in these dependency proceedings with respect to matters over which the juvenile court had ultimate authority would infringe on the ability of juvenile courts to make and to have implemented decisions based on the children's best interests. Since federal law has traditionally deferred to the state courts in individual cases dealing with the protection and custody of children, we should not find a congressional intent to alter this established relationship in federal appropriations legislation designed to strengthen the state foster care system.

This court's conclusion that plaintiff may not recover damages for the alleged violations of federal law set forth in her complaint is consistent with most of the case law addressing actions under 42 U.S.C. §1983 based on alleged violations of the Adoption Assistance and Child Welfare Act.

*Lynch v. Dukakis, supra,* is the first case that considered a section 1983 action based upon this act. This was a class action in which plaintiffs sought only prospective injunctive and declaratory relief to compel a state which was receiving federal funds under the Adoption Assistance and Child Welfare Act to bring its foster care program into compliance with this federal legislation. Plaintiffs did not seek damages or relief directed to any particular case. The court held that foster children and their parents could bring an action to compel a state with systematic deficiencies in the operation of its foster care program to comply with this federal legislation.

In *Lesher v. Lavrich,* 784 F.2d 193 (6th Cir. 1986), a natural mother and stepfather of two children who had been removed through dependency proceedings brought a section 1983 action to compel the State of Ohio to return the children to their custody. Plaintiffs based their claim upon the state's failure to comply with the provisions of the Federal Adoption Assistance and Child Welfare Act. The court dismissed plaintiffs' claim on the ground that "whatever rights the Adoption Assistance Act might confer on parents, relief nullifying a prior state court judgment of child neglect or dependency, or awarding damages in connection therewith, would not be available." *Id.* at 197-8. The court distinguished this case from *Lynch v. Dukakis* on the ground that the plaintiffs in *Lynch v. Dukakis* sought only prospective relief requiring the state to revise its procedures to comply in the future with

the conditions for funding set forth in the Adoption Assistance and Child Welfare Act. The court said that while "[i]t may be reasonable to read the Adoption Assistance Act to permit parents and children affected by the programs it funds to sue to force those programs to comply with federal funding requirements," the act does not permit a party to seek "only retrospective relief, in the form of damages for the appellees' past conduct, and an injunction unwinding the prior neglect and dependency decision." *Id.* at 197.

In *Scrivner v. Andrews,* 816 F.2d 261 (6th Cir. 1987), the natural parents of a child placed in foster care brought a section 1983 action for damages arising out of the deprivation of their rights to meaningful visitation guaranteed by the Adoption Assistance and Child Welfare Act. The court held that damage actions would interfere with the flexibility that Congress intended for the state agencies to have with respect to offering preventive services and making decisions with respect to returning children to their families. The court agreed with the manner in which the *Lesher v. Lavrich* opinion distinguished *Lynch v. Dukakis* on the ground that plaintiffs sought only to force the state to initiate the procedures required by the federal legislation.

*Harpole v. Arkansas Dept. of Human Services,* 820 F.2d 923 (8th Cir. 1987) dismissed a section 1983 action for damages against a county department of social services for its alleged failure to protect children from neglect. In dismissing the claim based on Adoption Assistance and Child Welfare Act, the court said:

"Harpole also argues that defendants violated Titles IV and XX of the Social Security Act. In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that

section 1983 may encompass claims based on a state actor's violation of a federal statute. The statute, however, must create enforceable rights. *Middlesex City Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981). Harpole does not suggest that under these circumstances the Social Security Act creates a private cause of action for monetary damages and we fail to see how Congress intended to create enforceable rights in this situation. Title IV authorizes grants to states to provide aid and services to needy families with children and to provide child-welfare services. 42 U.S.C. §601 et seq. (1982). Title XX authorizes block grants to states for social services. 42 U.S.C. §1397 et seq. (1982). Title XX authorizes block grants to states for social services. 42 U.S.C. §1397 et seq. (1982). These statutes were enacted to enable states to provide financial assistance to needy persons and not as a means of seeking compensation when one of those persons is indirectly injured by the state." *Id.* at 928.

*In re Cynthia A.*, 8 Conn. App. 656, 514 A.2d 360 (1986) rejected the natural mother's claim that a failure to comply with the requirements of the Adoption Assistance and Child Welfare Act may be raised in a dependency proceeding. The court held that "[t]he act, however, is an appropriations act and does not apply to individual actions or judicial findings as the respondent argues, but merely sets forth general guidelines for a state's continued eligibility to receive funds for foster care maintenance." 514 A.2d at 365.

The only case that has not limited a section 1983 action based on the Adoption Assistance and Child Welfare Act to claims for prospective injunctive and declaratory relief is *L.J. by and through Darr v.*

*Massinga, supra.* In this case present and former foster children sued for injunctive relief and money damages based on systematic deficiencies in the foster care program of Baltimore City. The court upheld the preliminary injunctive relief requiring defendants to redress deficiencies in their foster care program and the lower court's denial of defendant's claims for immunity. In denying the immunity claims, the court cited *Wright v. Roanoke Redevelopment and Housing Authority,* ___ U.S. ___, 107 S.Ct. 766, 770, 773 (1987) for the proposition that in a private action under section 1983 to enforce compliance with appropriations legislation, "the Supreme Court did not distinguish between prospective equitable relief and an action for money damages." 838 F.2d at 123.

Finally, the Adoption Assistance and Child Welfare Act was enacted pursuant to Congress's power to spend federal funds. In 1981 in *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, the U.S. Supreme Court said that the typical remedy for a state's non-compliance with spending clause legislation is action by the federal government to terminate funds to the state, that relief in a private lawsuit in which there is no claim that the state is enforcing legislation inconsistent with federal law may possibly be limited to enjoining the federal government from providing funds to the states and that "[i]n no case, however, have we required a state to provide money to plaintiffs." 451 U.S. at 29.

In a dissenting opinion in *Del A. v. Edwards, supra,* Judge Smith concluded that a private action may not be brought under section 1983 to recover damages for violations of the Adoption Assistance

and Child Welfare Act.[5] The basis for the ruling was that damages are not available for alleged violations of spending clause legislation. This dissenting opinion relied on the opinion of Mr. Justice White, announcing the judgment of the court in *Guardians Association v. Civil Service Commission,* 463 U.S. 582, 596, 193 S.Ct. 3221, 3229 (1983):

"This is because the receipt of federal funds under typical Spending Clause legislation is a consensual matter: the state or other grantee weighs the benefits and burdens before accepting the funds and agreeing to comply with the conditions attached to their receipt. Typically, before funds are advanced, the appropriate federal official will determine whether the grantee's plan, proposal, or program will satisfy the conditions of the grant or other extension of federal funds, and the grantee will have in mind what its obligations will be. When in a later private suit brought by those for whose benefit the federal money was intended to be used it is determined, contrary to the state's position, that the conditions attached to the funds are not being complied with, it may be that the recipient would rather terminate its receipt of federal money than assume the unanticipated burdens." *Guardians Association, supra.*

The research of this court has failed to discover any case (other than *L. J. by and through Darr v.*

5. The majority opinion did not reach the issue of whether the Adoption Assistance and Child Welfare Act creates substantive rights enforceable in a damage action brought under section 1983. The majority opinion considered only whether the case should be dismissed on the ground of immunity and ruled in plaintiffs' favor as to this issue. The basis for the dissent was the majority's failure to consider defendants' claim that a private party may not recover damages for noncompliance with the Adoption Assistance and Child Welfare Act and to resolve this claim in defendants' favor.

*Massinga, supra*) in which a plaintiff was permitted to pursue a damage action for a state or local government's alleged failure to provide services required by federal spending clause legislation. The *Wright v. City of Roanoke Redevelopment and Housing Authority* opinion that was cited in *L. J. by and through Darr v. Massinga* is not controlling. In that case public housing tenants sued for injunctive relief and to recover over-payments of rent. They based their section 1983 claim on federal legislation that limited the percentage of income that a tenant may be compelled to pay as rent to a housing authority. The Supreme Court held that tenants could bring an action under section 1983 to enforce their rights under this federal legislation.

The *Wright* case is not relevant for at least two reasons. First, the federal legislation on which plaintiff sued does not appear to be spending clause legislation. Neither the majority nor the dissenting opinions characterized the legislation in this fashion. It is not likely that the U.S. Supreme Court intended to resolve the issue of whether a private action for damages may be brought for violations of federal spending clause legislation through an opinion that never addressed the issue. Second, the statutory breach in the *Wright* case did not involve the failure of the state to provide mandated services but, instead, the state's refusal to recognize a monetary benefit conferred directly upon plaintiffs.

## II

Plaintiff also raises a separate claim based on 42 U.S.C. §1983. A claim may be brought under section 1983 for alleged violations of any federal law — section 1983 jurisdiction is not limited to claims based on legislation dealing with civil rights or

equal protection. *Maine v. Thiboutot,* 488 U.S. 1, 100 S.Ct. 2502 (1980). But the remedy which the plaintiff seeks in a section 1983 action must be found in the federal law that allegedly has been violated. No damage claim may be maintained under section 1983 based on federal legislation that does not either explicitly or implicitly permit the award of damages in a private action. *Pennhurst State School and Hospital v. Halderman, supra,* 451 U.S. at 28-30, 101 S.Ct. at 1545-6; *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625 (1981).

In these proceedings plaintiff bases her section 1983 claim solely on alleged violations of the Federal Adoption Assistance and Child Welfare Act. Since we have concluded that plaintiff has no right to seek damages under this legislation, plaintiff may not pursue a damage claim under section 1983. See *Scrivner v. Andrews, supra,* 816 F.2d at 262-4 and cases cited therein; *In re Scott County Master Docket, supra,* 672 F. Supp. at 1203.

### III

Plaintiff makes a general claim for damages based on the Juvenile Act of Pennsylvania (42 Pa.C.S. §6301 et seq.) and rights guaranteed by Article I, section 1 of the Constitution of the Commonwealth of Pennsylvania. No case law supports this claim.

For these reasons, we enter the following

### ORDER

On this April 7, 1989, it is hereby ordered that defendants' preliminary objections in the nature of a demurrer are sustained and that plaintiff's complaint is dismissed as to all defendants.