Leslie A. SCRIVNER and Ashley Scrivner, by Her Next Friend and Mother, Leslie A. Scrivner, Plaintiffs-Appellants,

v.

Katherine ANDREWS, Saundra Roden and Colleen West, Defendants-Appellees.

No. 86–5213.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1986.

Decided April 20, 1987.

Jonathan Hewett (argued), Central Kentucky Legal Services, Inc., Lexington, Ky., for plaintiffs-appellants.

Ben L. Kessinger, Jr., Stites and Harbison, Lexington, Ky., Stanley A. Stratford (argued), Charlotte Lois Levy, Cabinet for Human Resources, Office of the Counsel, Frankfort, Ky., for defendants-appellees.

Before KRUPANSKY, NELSON and RYAN, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiff-appellant Leslie A. Scrivner (Scrivner) and her daughter, Ashley Scrivner (Ashley), appealed from a final order of the district court dismissing this action initiated pursuant to 42 U.S.C. § 1983.

On June 6, 1985, the District Court for Fayette County, Kentucky issued an order directing that Ashley, an eight-month old infant, be removed from Scrivner's custody and placed into a foster home. Defendants Katherine Andrews (Andrews), Saundra Roden (Roden), and Colleen West (West), three social workers employed by the Kentucky Cabinet for Human Services, arranged for Ashley's placement into a foster home. Scrivner had not contested the propriety of the defendants' initial actions in securing Ashley's placement into the foster home.

Subsequent to Ashley's placement into a home, the defendants arranged visiting privileges for Scrivner which permitted her to visit Ashley for one hour in alternating weeks. The plaintiffs' complaint alleged that the original visitation arrangements were inadequate and that the defendant social workers failed to inform Scrivner of her right to contest the schedule. However, it was undisputed that on July 11, 1985, approximately one month after the original visitation schedule had been determined, Scrivner's attorney requested an evidentiary hearing to contest the schedule. Subsequent to the hearing, a state hearing officer issued a decision on August 16, 1985 which permitted Scrivner to visit Ashley for three hours on two days of each week. Scrivner was notified of her right to appeal the decision, however she elected not to do so.

In the complaint filed herein the plaintiffs contended that, as a result of the defendants failure to inform Scrivner of her right to an administrative hearing to contest the initial visitation schedule, both Scrivner and Ashley were deprived of their joint federal right to "meaningful visitation" which had been secured to them by operation of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 620 et seq. (the Adoption Assistance Act). Scrivner also charged that the defendants' failure to notify her of her right to an evidentiary hearing violated the due process clause of the Fourteenth Amendment. The district court granted the defendants' motion to dismiss plaintiffs' complaint and this timely appeal followed.

On appeal, plaintiffs asserted that they had a private cause of action for damages pursuant to 42 U.S.C. § 1983 for deprivation of their joint federal right to "meaningful visitation" which was secured to them by the Adoption Assistance Act.

Under 42 U.S.C. § 1983, a private plaintiff may state a cause of action for the deprivation of rights secured by a federal statute. *Wright v. City of Roanoke Redevelopment and Housing Authority,* —— U.S. ——, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987); *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). However, § 1983 does not provide a remedy if (1) the federal law does not create enforceable rights; or (2) Congress has foreclosed the § 1983 remedy in the act under consideration. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981); *Pennhurst State School & Hospital v.*

*Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). An enforceable right is created "when Congress mandates, rather than merely encourages, a specified entitlement." *Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission,* 739 F.2d 1467, 1471 (9th Cir.1984). *See also, Pennhurst,* 451 U.S. at 20, 101 S.Ct. at 1541. Accordingly, an examination of the essential provisions of the Adoption Assistance Act is in order to determine if the Act created a federal right to "meaningful visitation" enforceable under § 1983.

The Adoption Assistance Act amended Title IV of the Social Security Act and "sought to provide the states with fiscal incentives to encourage a more active and systematic monitoring of children in the foster care system." *State of Vermont Department of Social and Rehabilitation Services v. United States Department of Health and Human Services,* 798 F.2d 57, 59 (2d Cir.1986). The Act amended the Title IV–B program, 42 U.S.C. §§ 620–628, which provides federal funds to the states for the improvement of child welfare services. The Act conditions the receipt of federal funds upon the state's implementation of a "case review system" for each child receiving foster care under the supervision of the state. 42 U.S.C. § 627(a)(2)(B).[1] To satisfy federal funding requirements, a state's system of review must ensure (1) that each child has a written individualized case plan designed to facilitate placement consistent with his or her best interests and special needs; (2) that the state conducts a status review of each child's foster care placement within six months of the child's original placement and every six months thereafter; and (3) that the state conducts a dispositional hearing which reviews each child's status within eighteen months of his or her original placement and periodically thereafter. 42 U.S.C. § 675. If a state's system of review complies with the minimum requirements set forth above, it is otherwise afforded considerable flexibility in unilaterally developing administrative procedures compatible with its own unique foster care circumstances. *State of Vermont Department of Social and Rehabilitation Services v. United States Department of Health and Human Services,* 798 F.2d 57, 60 (2d Cir. 1986).

In *Lynch v. Dukakis,* 719 F.2d 504 (1st Cir.1983), the First Circuit concluded that a class consisting of "all children under the jurisdiction of Massachusett's foster family home care system, and all members of the children's natural and foster families" could maintain a § 1983 action for prospective injunctive relief where it was alleged that the state had not complied with the statutorily mandated procedure of developing and periodically reviewing case plans for the children under its supervision. Implicit in the *Lynch* decision was the understanding that the Adoption Assistance Act bestowed upon children under state supervised foster care the right to an individualized case plan and a system for case review and that those children and the members of their natural and foster families were free to pursue a § 1983 action which sought to enjoin the state to comply with its mandated system for case review.

[3, 4] The present action is distinguishable from *Lynch* because it involves a claim that is not predicated upon the right to an individualized case plan and case review, but rather is based upon a claimed right to "meaningful visitation" allegedly secured to plaintiffs by virtue of the Adoption Assistance Act. This court concludes

1. Under the Act, Congress authorized annual appropriations of $226 million "for the purpose of establishing, extending, and strengthening child welfare services." 42 U.S.C. § 620. Of the $226 million, $141 million is distributed to the states pursuant to a complex allotment formula which determines the appropriate percentage of the funds which each state is to receive. 42 U.S.C. § 621. However, to be eligible for any monies appropriated in excess of $141 million, a state must have implemented to the satisfaction of the Secretary of Health and Human Services a "case review system" which conforms to the minimum requirements set forth in 42 U.S.C. § 627(a)(2)(B).

that the Act does not create a right to "meaningful visitation" enforceable under § 1983. While the funding provisions of the Act were intended to encourage the states to engage in more active and systematic monitoring of children in foster homes, the Act neither explicitly nor implicitly creates a federal statutory right to "meaningful visitation." Accordingly, plaintiffs failed to demonstrate that the defendants' actions deprived them of a right secured to them by the laws of the United States. Moreover, as this circuit noted in *Lesher v. Lavrich*, 784 F.2d 193, 197–98 (6th Cir.1986), damages are not available in a § 1983 action alleging a violation of the Adoption Assistance Act. *Cf. Guardians Association v. Civil Service Commission of the City of New York*, 463 U.S. 582, 602 n. 23, 103 S.Ct. 3221, 3232 n. 23, 77 L.Ed.2d 866 (1983) (opinion of White, J.) ("Damages indeed are usually available in a § 1983 action, but such is not the case when the plaintiff alleges only a deprivation of rights secured by a Spending Clause statute.")

Scrivner has also contended that the district court erred in dismissing her procedural due process claim. Essentially, Scrivner charged that her due process rights were infringed when the defendants failed to inform her of her right to a hearing and that, as a result of the defendants failure to notify her of her right to a hearing, both she and Ashley were forced to endure a prolonged period of inadequate visitation. However, the record disclosed that on July 11, 1985, approximately one month after Ashley was removed from Scrivner's custody, Scrivner requested a hearing and that Scrivner's visitation rights were substantially modified by an order of the hearing officer entered on August 16, 1985. Accordingly, this court cannot conclude that the actions of the defendants infringed Scrivner's right to procedural due process.

For the reasons stated above, the judgment of the district court is hereby AFFIRMED.