959 F.2d 883
 YVONNE L., a minor; Demond L., a minor, By and Through
their guardian ad litem and next friend, Kemp
LEWIS, Plaintiffs-Appellants,
v.
NEW MEXICO DEPARTMENT OF HUMAN SERVICES; Juan R. Vigil,
individually and as former Secretary of the New Mexico
Department of Human Services; Thomas Kerley, individually
and as Director of the San Juan County Social Services
Division of the New Mexico Department of Human Services;
Judy Stolz, individually and as Social Worker for the San
Juan Social Services Division of the New Mexico Department
of Human Services; John Doe; Jane Doe, unknown employees
of Child Haven, Inc.; John Doe, II; James Doe, II, unknown
employees of the New Mexico Department of Human Services,
Defendants-Appellees.
 No. 90-2196.
 United States Court of Appeals,
Tenth Circuit.
 March 24, 1992.
 
 Christopher T. Dunn, Children's Rights Project, American Civil Liberties Union, New York City (Ann Yalman, Susan Schaefer McDevitt, Santa Fe, N.M., and Frederick Moeller, Durango, Colo., on the briefs), for plaintiffs-appellants.
 Paula G. Maynes (John B. Pound with her on the briefs), of Montgomery & Andrews, Santa Fe, N.M., for defendants-appellees.
 Christopher T. Dunn and Marcia Robinson Lowry, New York City, filed an amicus curiae brief on behalf of the American Civil Liberties Union Children's Rights Project.
 Before LOGAN, SEYMOUR and MOORE, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiffs, Yvonne L. and Demond L., by and through their guardian ad litem, Kemp Lewis, appeal from the district court's grant of summary judgment against them in this 42 U.S.C. § 1983 case. On appeal, we must determine (1) whether an individual right of action exists to recover money damages in a § 1983 action for violations of § 101(a)(10) of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 671(a)(10); and (2) whether the law was clearly established in August 1985 that a child in the state's legal and physical custody, placed by the state in a privately operated crisis shelter group home, had a constitutional right to be protected from bodily harm from private third parties which the case workers knew or suspected would likely occur.
 
 
 2
 * Yvonne L. and Demond L. are minor children who were in the physical and legal custody of the state of New Mexico Human Services Department (HSD). HSD had placed them with a foster family from April 1, 1983, to August 1, 1984, and then with their maternal grandparents, in the role of foster parents, with the state retaining legal custody. When their grandmother died suddenly in August 1985, HSD placed the children with Child Haven, Inc., a not-for-profit corporation which operated a foster care and shelter care facility for children.
 
 
 3
 The children were placed in Child Haven pursuant to an arrangement allowing the state to request placement of children under twelve in Child Haven in accordance with state regulations. At the time of placement, defendant Juan Vigil was the secretary of the HSD, defendant Thomas Kerley was the field office manager for the HSD office in Farmington, New Mexico, and defendant Judy Stolz was the HSD case worker for Yvonne and Demond.
 
 
 4
 Plaintiffs allege that while Yvonne was at Child Haven she was sexually assaulted and that Demond witnessed the incident. Christine B., a minor resident of Child Haven, allegedly sodomized and raped Yvonne and verbally threatened Demond in an unsupervised area of Child Haven on August 16, 1985.
 
 
 5
 Plaintiffs brought this § 1983 action against state officials and HSD social workers for alleged violations of plaintiffs' federal statutory and constitutional rights while in foster care.[1] Specifically, plaintiffs argue that if defendants had properly monitored Child Haven, they would have not placed the children in the facility due to the "general operation of Childhaven and the particular characteristics of the children residing in Childhaven at that time." I R. tab 171 at 3.
 
 
 6
 The district court granted summary judgment for defendants, finding there can be no money damages in a § 1983 suit based on violations of the AACWA. The court also found there was no clearly established constitutional right in August 1985 protecting a child in the legal and physical custody of the state, who was placed in a privately operated crisis shelter group home, from bodily harm from third persons. Because the court found no clearly established right, the court upheld the qualified immunity defenses of defendants. The district court dismissed the complaint, and plaintiffs appeal.
 
 
 7
 We review the trial court's grant of summary judgment by examining the record "to determine whether any genuine issue of material fact pertinent to the ruling remains and, if not, whether the substantive law was correctly applied." McKibben v. Chubb, 840 F.2d 1525, 1528 (10th Cir.1988) (quoting Franks v. Nimmo, 796 F.2d 1230, 1235 (10th Cir.1986)). We review the district court's determination of issues of law de novo. E.g., United States v. Maher, 919 F.2d 1482, 1485 (10th Cir.1990).
 
 II
 
 8
 Plaintiffs allege that defendants in their individual capacities violated provisions of the AACWA, codified at 42 U.S.C. § 671(a), causing plaintiffs damages that they may recover under § 1983. The district court found that the AACWA created rights "to a case review system, to a case plan for each child, and, possibly, standards reasonably in accord with those of national organizations." I R. tab 178 at 8. The court concluded, however, that because the AACWA is a spending statute, it creates no right to money damages under § 1983.
 
 
 9
 Section 1983 provides a private cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. In Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), the Supreme Court held that § 1983 generally is available to remedy violations of federal statutes. A § 1983 action is foreclosed, however, if (1) the federal statute does not create enforceable rights, or (2) Congress specifically has foreclosed private enforcement of the statute. Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (quoting Wright v. City of Roanoke Redev. & Hous. Auth., 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)). The threshold inquiry in determining if a statute creates a federal right enforceable under § 1983 is "whether 'the provision in question was intend[ed] to benefit the putative plaintiff.' " Id. (quoting Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989)) (alteration in original). If so, a right is created unless the provision
 
 
 10
 reflects merely a "congressional preference" for a certain kind of conduct rather than a binding obligation on the governmental unit, Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 19 [101 S.Ct. 1531, 1541, 67 L.Ed.2d 694] (1981), or unless the interest the plaintiff asserts is "too vague and amorphous" such that it is "beyond the competence of the judiciary to enforce."
 
 
 11
 Id. (quoting Golden State, 493 U.S. at 106, 110 S.Ct. at 448 (quoting Wright, 479 U.S. at 431-32, 107 S.Ct. at 774-75)). We apply this analysis to the applicable provisions of the AACWA.
 
 
 12
 The AACWA[2] establishes a program under which states can receive federal payments for state foster care programs. See 42 U.S.C. §§ 620-28, 670-76. The AACWA provides funds to states that have received federal approval for their state plans. Id. § 670. Under the AACWA,
 
 
 13
 In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which--
 
 
 14
 . . . . .
 
 
 15
 (10) provides for the establishment or designation of a State authority or authorities which shall be responsible for establishing and maintaining standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for such institutions or homes, including standards related to admission policies, safety, sanitation, and protection of civil rights, and provides that the standards so established shall be applied by the State to any foster family home or child care institution receiving funds under this part or part B of this subchapter;
 
 
 16
 (11) provides for periodic review of the standards referred to in the preceding paragraph and amounts paid as to foster care maintenance payments and adoption assistance payments to assure their continuing appropriateness;
 
 
 17
 . . . . .
 
 
 18
 (16) provides for the development of a case plan (as defined in section 675(1) of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meet the requirements described in section 675(5)(B) of this title with respect to each such child; ....
 
 
 19
 42 U.S.C. § 671(a) (1983) (as amended by Pub.L. No. 98-378 § 11(c), 1984 U.S.C.C.A.N. (98 Stat.) 1318).
 
 
 20
 The statute was enacted "[f]or the purpose of enabling each State to provide, in appropriate cases, foster care and adoption assistance for children." 42 U.S.C. § 670 (1983) (amended 1986). Defendants properly do not dispute that children in state foster care, including plaintiffs, are intended beneficiaries of the AACWA.
 
 
 21
 The next inquiry is whether the AACWA "reflects merely a 'congressional preference' for a certain kind of conduct rather than a binding obligation on the government unit." Wilder, 110 S.Ct. at 2517 (citing Pennhurst State School & Hosp. v. Halderman, 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981)). In Pennhurst, the Supreme Court found that § 6010 of the Developmentally Disabled Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6000 et seq., did not create a binding obligation because "neither the statute nor the corresponding regulations made compliance with the provision a condition of receipt of federal funding." Wilder, 110 S.Ct. at 2518 (citing Pennhurst, 451 U.S. at 24, 101 S.Ct. at 1543). The Pennhurst Court reasoned that the intent of Congress to impose a condition of compliance in order to receive federal funds must be clearly expressed "so that the States can knowingly decide whether or not to accept those funds." 451 U.S. at 24, 101 S.Ct. at 1543.
 
 
 22
 Defendants cite our decision in Spielman v. Hildebrand, 873 F.2d 1377 (10th Cir.1989), to support their contention that the AACWA, like the statute in Pennhurst, only encourages, rather than mandates, a specific entitlement. In Spielman, we acknowledged that the AACWA sets out minimum requirements that states must meet as a prerequisite for federal funding, but we suggested that might not be enough to meet the "mandate" requirement of Pennhurst.[3] Spielman, 873 F.2d at 1386. See also Harpole v. Arkansas Dep't of Human Servs., 820 F.2d 923, 928 (8th Cir.1987) (stating, without further analysis, that the AACWA was "enacted to enable states to provide financial assistance to needy persons and not as a means of seeking compensation when one of those persons is indirectly injured by the state").
 
 
 23
 The clear language of § 671(a), under which plaintiffs assert their rights, makes its provisions mandatory upon participating state plans. Section 671(a) states that "[i]n order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which" meets the requirements set out in the statute including: establishment of a state authority to establish and maintain standards for foster care homes "reasonably in accord with recommended standards of national organizations," § 671(a)(10); periodic review of adopted standards, § 671(a)(11); and case plans and case review systems, § 671(a)(16). The statute explicitly makes compliance with the § 671(a) provisions a condition of funding.[4] See Wilder, 110 S.Ct. at 2519 (conditions mandatory where "provision of federal funds is expressly conditioned on compliance"). The AACWA indicates an intent to bind the state, because it sets out a quid pro quo: foster care payments in exchange for specified planning and operation standards. Thus we discern in the AACWA an intent to bind states that participate.
 
 
 24
 We still must consider whether plaintiffs' asserted interest is so "vague and amorphous" that the judiciary is not competent to enforce it. See Wilder, 110 S.Ct. at 2517. In support of their argument that it is, defendants cite, inter alia, two Sixth Circuit cases. But these cases merely held that there is no cause of action for damages under § 1983 for violations of certain provisions of the AACWA, Scrivner v. Andrews, 816 F.2d 261, 264 (6th Cir.1987); Lesher v. Lavrich, 784 F.2d 193, 197 (6th Cir.1986). These Sixth Circuit cases dealt with meaningful visitation, see Scrivner, 816 F.2d at 264, and preplacement preventive service plans, see Lesher, 784 F.2d at 197. In Timmy S. v. Stumbo, 916 F.2d 312, 316 & n. 6 (6th Cir.1990), that circuit allowed an individual cause of action for injunctive relief to enforce a provision of the AACWA, while holding that damages in § 1983 action are not available.
 
 
 25
 One circuit court case has recognized a cause of action for damages. L.J. ex rel. Darr v. Massinga, 838 F.2d 118 (4th Cir.1988) (allowing cause of action for injunctive relief and money damages for violations of § 671(a)(10) ("standards ... reasonably in accord with recommended standards of national organizations"); § 627(a)(2)(B) (case review system); § 671(a)(16) (case plan and case review system); and § 671(a)(9) (provision for reporting suspected neglect or abuse)), cert. denied, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989); see also Joseph A. ex rel. Wolfe v. New Mexico Dep't of Human Servs., 575 F.Supp. 346 (D.N.M.1983) (denying defendant's motion for summary judgment based on qualified immunity on plaintiffs' claims for damages). But see Harpole v. Arkansas Dep't of Human Servs., 820 F.2d at 928 (grandmother of child who died after social services released him to his mother's care had no § 1983 private cause of action for damages under the AACWA). Several other appellate courts have held under particular sections of the AACWA that there is a private right of action for injunctive relief without discussing whether monetary damages are available. See Winston v. Children & Youth Servs., 948 F.2d 1380 (3d Cir.1991) (finding private right of action under § 671(a)(15) (provision requiring "reasonable efforts" to allow child to return to his or her own home));[5] Artist M. v. Johnson, 917 F.2d 980 (7th Cir.1990) (holding private cause of action for injunctive relief for violations of § 671(a)(9) (provision for reporting suspected neglect or abuse), § 671(a)(15) (provision requiring "reasonable efforts" to prevent need to remove child from own home), and § 271(a)(16) (case plan and case review system)), cert. granted sub nom., Suter v. Artist M., --- U.S. ----, 111 S.Ct. 2008, 114 L.Ed.2d 97 (1991); Lynch v. Dukakis, 719 F.2d 504 (1st Cir.1983) (finding a private cause of action for injunctive relief for violations of 42 U.S.C. § 671(a)(16) (case plan provision), and 42 U.S.C. § 675(5)(B) (six month status review provision)).[6]
 
 
 26
 After careful review, we believe the dicta in our Spielman decision paints with too broad a brush, and that individual causes of action may be appropriate, depending upon the particular section or violation involved. Because of our disposition, however, we need not decide whether such an action would include a right to monetary damages. We now focus on the specific allegations of the instant complaint. The district court in the case before us found that the AACWA created rights "to a case review system and a case plan" under § 671(a)(16); that provision, however, is not mentioned in plaintiffs' complaint nor is it the basis of plaintiffs' AACWA claim. See I R. tab. 1, 9-11.
 
 
 27
 The crux of plaintiffs' AACWA claim is that defendants violated their asserted rights, under § 671(a)(10), to care in a foster home which reasonably meets standards of national organizations.[7] The district court stated that the AACWA "possibly" created rights to care in a foster home with "standards reasonably in accord with those of national organizations." I R. tab 178, 8. The language of § 671(a)(10) by itself does not support such a cause of action. It only references "standards of national organizations concerned with standards for such institutions or [foster] homes." That is the type of vague and amorphous language identified in Wilder, 110 S.Ct. at 2517, and Wright, 479 U.S. at 431-32, 107 S.Ct. at 774-75, that cannot be judicially enforced.
 
 
 28
 Section 671(a)(10) does require that the state develop a state plan that provides for authorities who are responsible for establishing and maintaining standards for child care institutions "which are reasonably in accord with recommended standards of national organizations." This would seem to give the state discretion as to which national standards to adopt; but clearly it requires that the state develop and implement a plan that incorporates reasonable standards. Plaintiffs assert that defendants have failed to comply with § 671(a)(10). After a careful review of the record we find the plaintiffs' contentions and alleged facts insufficient to defeat summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986) (appeals court may sustain summary judgment if plaintiffs fail to make showing sufficient to support any essential element of claim).
 
 Plaintiffs' complaint asserted that
 
 29
 a. A clearly designated authority of the State, which established child care standards has not been designated.
 
 
 30
 b. In the alternative, if there were such a designated authority, it has failed to establish standards.
 
 
 31
 c. In the alternative, if there are standards, the standards are not reasonably in accord with recommended standards of national organizations.
 
 
 32
 d. In the alternative, if there is a designated authority and if it has promulgated standards, and if those standards are reasonably in accord with those of national organizations, the standards so established have not been actually applied, maintained or reviewed in a reasonably vigorous manner to institutions such as Child Haven, Inc.
 
 
 33
 e. In the alternative, if a designated authority has promulgated standards which are reasonably in accord with national standards, the standards have not been clear in their applicability or have been contradicted by other standards, with the result that bureaucratic confusions have prevented fulfillment of the requirements of 42 U.S.C. Section 671.
 
 
 34
 I R. tab 1, 10-11. The record on appeal does not include a copy of the state plan, although references indicate New Mexico did promulgate a plan. Plaintiffs do not identify the national standards that the state plan does not meet, nor the state plan standards defendants violated. Plaintiffs simply identify program areas they assert were lacking at Child Haven and contend that if such deficiencies exist it is because of defendants' failure to establish or maintain "national standards." Obviously damages, the only remedy sought here, cannot be obtained against the state itself, and the two social worker defendants are not responsible for establishing standards. As to defendant Vigil, the allegations are too conclusory to defeat summary judgment. Thus, although we reason differently than the district court, we affirm the dismissal of the AACWA claims.
 
 III
 
 35
 In addition to the AACWA claim, plaintiffs allege that defendants violated their constitutional rights when they placed plaintiffs in a foster shelter home that was unsafe due to inadequate staffing and supervision, and failure to screen and isolate children posing a threat to others. They allege that defendants knew or should have known that their actions in formulating and applying policy and standards applicable to Child Haven, and in the actual placement, put plaintiffs in "personal danger" and at "pervasive risk of harm." I R. tab 1 at 7-9. If defendants knew of the asserted danger to plaintiffs or failed to exercise professional judgment with respect thereto, as the complaint sets forth, and if an affirmative link to the injuries plaintiffs suffered can be shown, then under the analysis set forth hereafter defendants violated plaintiffs' constitutional rights.
 
 
 36
 Even if defendants did violate plaintiffs' constitutional rights, as government officials performing discretionary duties they are immune from civil liability if their conduct did not violate an established statutory or constitutional right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The district court determined that defendants were entitled to qualified immunity because it was not "clearly established in August 1985 that public officials who place a child, who is in State legal custody, in a foster home, in which the child is at risk of violence from private individuals, violates the child's Fourteenth Amendment due process rights." I R. tab 171 at 7, 9. Plaintiffs challenge the district court's finding of qualified immunity.
 
 
 37
 Qualified immunity is a question of law and the standard of review is de novo. Eastwood v. Dep't of Corrections, 846 F.2d 627, 629 (10th Cir.1988). For defendants to be liable the contours of an asserted right must have been sufficiently clear that reasonable officials in their positions would understand that their actions would violate that right. But the precise action or omission in question need not previously have been held unlawful, Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); Eastwood, 846 F.2d at 630; the facts need not precisely mirror the facts of the precedent setting case. See Garcia ex rel. Garcia v. Miera, 817 F.2d 650, 657 (10th Cir.1987), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); Eastwood, 846 F.2d at 630. With these principles in mind, we must determine whether, in August 1985, the right asserted by plaintiffs, not to be placed in a foster care environment involving a known or reasonably suspected risk of harm by a third party, was "either expressly established by, or clearly implicit in, existing case law." K.H. ex rel. Murphy v. Morgan, 914 F.2d 846, 850 (7th Cir.1990).
 
 
 38
 The Supreme Court has not expressly decided the extent of due process rights to safety for children in foster care. The Court in DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 201, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989), held there is no affirmative duty of the state to protect a child who is in his parents' custody. In a footnote, the Court recognized that
 
 
 39
 [h]ad the State by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect. Indeed, several Courts of Appeal have held, by analogy to Estelle and Youngberg, that the State may be held liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents.
 
 
 40
 DeShaney, 489 U.S. at 201 n. 9, 109 S.Ct. at 1006 n. 9 (citing Doe v. New York City Dep't of Social Servs., 649 F.2d 134, 141-42 (2d Cir.1981), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983), and Taylor ex rel. Walker v. Ledbetter, 818 F.2d 791, 794-97 (11th Cir.1987) (en banc), cert. denied, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989)). Plaintiffs point out that the Supreme Court has found a substantive due process interest in safe conditions, personal security, and bodily integrity for persons in state custody, and they assert that the right they seek to enforce in the instant case is already established, albeit in slightly different factual contexts, in those cases. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (pretrial detainees); Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (mentally retarded); Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (prisoners).
 
 
 41
 In Youngberg, the Supreme Court held that retarded persons committed to state institutions have a Fourteenth Amendment substantive due process right to "reasonable care and safety." 457 U.S. at 324, 102 S.Ct. at 2462. Thus, in 1982 it was established that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney, 489 U.S. at 199-200, 109 S.Ct. at 1004-05. Youngberg arguably reaches the constitutional right plaintiffs assert to be clearly established.
 
 
 42
 Moreover, a right need not have been addressed by the Supreme Court to be established; such a rule "could have the practical effect of converting qualified immunity into absolute immunity." Benson v. Allphin, 786 F.2d 268, 275 (7th Cir.), cert. denied, 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986). Decisions from at least three circuits explicitly support plaintiffs' assertion of a clearly established right to reasonable safety while in foster care. The leading and earliest circuit-level case is Doe v. New York City Dep't of Social Servs., 649 F.2d 134 (2d Cir.1981), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). In Doe, the Second Circuit squarely held that a child in state custody has a constitutional right not to be placed in a foster care setting known to be unsafe. Id. at 141. Likewise, the Eleventh Circuit, in Taylor ex rel. Walker v. Ledbetter, 818 F.2d 791 (11th Cir.1987) (en banc), cert. denied, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989), relying upon Doe and Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), held "that a child involuntarily placed in a foster home is in a situation so analogous to a prisoner in a penal institution and a child confined in a mental health facility that the foster child may bring a section 1983 action for violation of fourteenth amendment rights." Id. at 797 (applying the law to a 1982 incident).
 
 
 43
 Finally, the Seventh Circuit, in K.H. ex rel. Murphy v. Morgan, 914 F.2d 846 (7th Cir.1990), relying upon Youngberg and Doe, found a constitutional "right not to be placed with a foster parent who the state's caseworkers and supervisors know or suspect is likely to abuse or neglect the foster child," id. at 853, was clearly established in 1986. In Morgan, the state placed a plaintiff in a series of foster homes and failed "to take steps to prevent the child from deteriorating physically or psychologically as a result of either mistreatment by one or more sets of foster parents or the frequency with which the child is moved about within the foster-home system or, as in this case both." Id. at 851. The court stated: "[i]t should have been obvious from the day Youngberg was decided that a state could not avoid the responsibilities which that decision had placed on it merely by delegating custodial responsibility to irresponsible private persons...." Id. Thus, the right plaintiffs assert was clearly established at least in the Second Circuit by 1981, in the Seventh Circuit by 1986, and in the Eleventh Circuit by 1987.[8] See also Jensen v. Conrad, 747 F.2d 185, 190-91 (4th Cir.1984), cert. denied, 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985) (discussing prison cases); Society for Good Will to Retarded Children, Inc. v. Cuomo, 737 F.2d 1239, 1243 (2d Cir.1984) (retarded children in state custody); Rubacha ex rel. Rubacha v. Coler, 607 F.Supp. 477, 479 (N.D.Ill.1985) (same).
 
 
 44
 Defendants attempt to distinguish these cases by an argument that "the state has more direct and immediate control over institutions it operates than over privately operated facilities with their own staffs and management policies." Appellees' Answer Brief at 27-28. They also point out that the Sixth Circuit has held that the right was not clearly established in 1982. Eugene D. ex rel. Olivia D. v. Karman, 889 F.2d 701 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990). But see id. at 711 (Merritt, C.J., dissenting). Defendants also assert the Seventh Circuit held, in 1989, that there was no clearly established right in 1984. Doe v. Bobbitt, 881 F.2d 510 (7th Cir.1989), cert. denied, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990). We note that a year later the Seventh Circuit in Morgan distinguished and limited Bobbitt. See Morgan, 914 F.2d at 852-53.
 
 
 45
 We believe a juvenile detention case in our circuit decided in 1982, Milonas v. Williams, 691 F.2d 931 (10th Cir.1982), cert. denied, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983), supports a clearly established right to protection while in foster care. In Milonas, we held that juveniles involuntarily placed in a private school by state agencies or courts had liberty interests protected by the Due Process Clause of the Fourteenth Amendment; specifically, "[s]uch [a] person has the right to reasonably safe conditions of confinement." Id. at 942. The Supreme Court decision in Youngberg, our decision in Milonas, and the Second Circuit decision in Doe all were decided before August 1985. We are convinced that these cases clearly alerted persons in the positions of defendants that children in the custody of a state had a constitutional right to be reasonably safe from harm; and that if the persons responsible place children in a foster home or institution that they know or suspect to be dangerous to the children they incur liability if the harm occurs.
 
 
 46
 Defendants assert that we should uphold summary judgment because plaintiffs have not produced evidence that the defendants acted toward them with deliberate indifference, therefore they are entitled to qualified immunity. Because the district court's finding of no clearly established constitutional right in 1985, the district court did not reach that issue. While we may sustain summary judgment if plaintiffs have failed to make a showing sufficient to support any essential element of their case, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), "[w]e are generally reluctant to affirm a trial court's decision on legal grounds not considered by the trial court, and will do so only when the facts are sufficiently clear to permit a determination." Wilson v. St. Louis-San Francisco Ry. Co., 673 F.2d 1152, 1155 (10th Cir.1982); see also Bath v. National Ass'n of Intercollegiate Athletics, 843 F.2d 1315, 1317 (10th Cir.1988) (refusing to affirm summary judgment because, inter alia, "under these facts, the substance of plaintiff's claims should [not] be examined for the first time on appeal"); cf. Colorado Property Acquisitions, Inc. v. United States, 894 F.2d 1173, 1175 n. 5 (10th Cir.1990) (affirming lower court on "dispositive, indisputable, alternative grounds" in record and raised on appeal); Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118, 1124 (10th Cir.), cert. denied, 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979) (affirming summary judgment when "both sides briefed issue, and the facts are sufficiently clear to permit the determination").
 
 
 47
 In the instant case the district court did not discuss the evidence before it, which was extensive; it did not determine the standard to be applied; nor did it determine whether defendants' conduct proximately caused plaintiffs' injuries. We believe it is best to have the fact issues addressed first by the trial court, and therefore decline the invitation to consider affirming without a remand. See Wilson, 673 F.2d at 1155, and Bath, 843 F.2d at 1317.
 
 
 48
 The standard to be applied, however, is a legal issue, which we determine here to give guidance to the district court on the remand. Defendants assert that deliberate indifference, as articulated by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), is the appropriate standard. In Estelle, the Supreme Court held that if prison officials display deliberate indifference to a prisoner's serious illness or injury, they violate the Eighth Amendment right against cruel and unusual punishment. The Second and Eleventh Circuits appear to have adopted this standard in cases involving the constitutional right of children in state custody to reasonable safety while in foster care environment. See Taylor, 818 F.2d at 795-97; Doe, 649 F.2d at 141-45.
 
 
 49
 Plaintiffs argue that the Eight Amendment standard is inappropriate, and urge that we adopt the standard that the Supreme Court applied in Youngberg, 457 U.S. at 323, 102 S.Ct. at 2462. The Youngberg Court held that a mentally retarded person committed to a state institution had a Fourteenth Amendment right to reasonable protection from physical harm. Id. at 315-16, 102 S.Ct. at 2457-58. The standard set out in Youngberg was that state officials would be shielded from liability unless the defendants showed that they failed to exercise professional judgment. This standard has been adopted by the Seventh Circuit. See Morgan, 914 F.2d at 854 ("Only if without justification based either on financial constraints or on considerations of professional judgment [state welfare workers and their supervisors] place the child in hands they know to be dangerous or otherwise unfit do they expose themselves to liability in damages."). As applied to a foster care setting we doubt there is much difference in the two standards. "Failure to exercise professional judgment" does not mean mere negligence as we understand Youngberg; while it does not require actual knowledge the children will be harmed, it implies abdication of the duty to act professionally in making the placements. To the extent there is a difference in the standards, we agree with the Seventh Circuit that the Youngberg standard applies. The compelling appeal of the argument for the professional judgment standard is that foster children, like involuntarily committed patients, are "entitled to more considerate treatment and conditions" than criminals. Youngberg, 457 U.S. at 321-22, 102 S.Ct. at 2461-62. These are young children, taken by the state from their parents for reasons that generally are not the fault of the children themselves. The officials who place the children are acting in place of the parents.
 
 
 50
 AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Plaintiffs also named other defendants. Only these three defendants in their individual capacities remain in the case on appeal. Plaintiffs and Child Haven reached a settlement agreement and the claim against Child Haven was dismissed
 
 
 [2]
 42 U.S.C. § 671(a) (1983) (as amended by Pub.L. No. 98-378 § 11(c), 1984 U.S.C.C.A.N. (98 Stat.) 1318)
 
 
 [3]
 The plaintiffs in Spielman claimed violation of their rights under § 671(a)(12):
 In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which--
 (12) provides for granting an opportunity for a fair hearing before the State agency to any individual whose claim for benefits available pursuant to this part is denied or is not acted upon with reasonable promptness;
 42 U.S.C. § 671(a). Because the plaintiffs did not claim they had been denied benefits under the Act, Spielman held that the provision did not provide them a right to a hearing, and, alternatively, even if it did, a state court hearing afforded the plaintiffs that minimum requirement. 873 F.2d at 1386. Thus, although Spielman questions whether the AACWA " 'mandates, rather than encourages, a specified entitlement,' " id. (quoting Scrivner v. Andrews, 816 F.2d 261, 263 (6th Cir.1987) (quoting Keaukaha- Panaewa Community Ass'n v. Hawaiian Homes Comm'n, 739 F.2d 1467, 1471 (9th Cir.1984))), it is not dispositive in the instant case.
 Plaintiffs in Hidahl v. Gilpin County Dep't of Social Servs., 938 F.2d 1150 (10th Cir.1991), also asserted a § 1983 cause of action based on alleged violations of §§ 671, 672 of the AACWA and constitutional rights when social workers and police officers investigated them for child abuse, filed a dependency and neglect action against them, and removed their children from their home. In Hidahl we focused not on whether the AACWA created a private right of action, but instead upon qualified immunity. We found that a claim of bad faith against the defendants did not overcome the qualified immunity defense, and that the complaint did not show that defendants' conduct violated clearly established constitutional rights. Id. at 1154-55. We are satisfied that Hidahl, which involved different provisions of the AACWA, is neither controlling nor instructive on the issue before us.
 
 
 [4]
 Section 671(b) reads as follows:
 The Secretary shall approve any plan which complies with the provisions of subsection (a) of this section. However, in any case in which the Secretary finds, after reasonable notice and opportunity for a hearing, that a State plan which has been approved by the Secretary no longer complies with the provisions of subsection (a) of this section, or that in the administration of the plan there is a substantial failure to comply with the provisions of the plan, the Secretary shall notify the State that further payments will not be made to the State under this part, or that such payments will be made to the State but reduced by an amount which the Secretary determines appropriate, until the Secretary is satisfied that there is no longer any such failure to comply, and until he is so satisfied he shall make no further payments to the State, or shall reduce such payments by the amount specified in his notification to the State.
 42 U.S.C. § 671(b).
 
 
 [5]
 The dissent in Winston assumed a right to damages exists. "The likelihood of a party completing litigation on such a claim appears especially high if viewed in light of a party's option to make a claim for damages." Winston, 948 F.2d at 1396 n. 6 (Garth, J., dissenting)
 
 
 [6]
 The Fifth Circuit, in Del A. v. Edwards, 855 F.2d 1148 (5th Cir.), vacated for reh'g en banc, 862 F.2d 1107 (1988), appeal dismissed, 867 F.2d 842 (1989), expressly reserved the issue of whether the AACWA created substantive rights enforceable under § 1983, and if so, whether money damages are available
 
 
 [7]
 The complaint reads as follows:
 
 
 [30]
 Plaintiffs' rights under Section 671 of the Social Security Act ... were deprived ... due to the Defendants' failure to insure that the following areas of Child Haven, Inc.'s operation ... [conformed] with national standards:
 (a) Admission and Classification Policy. Child Haven failed to screen and isolate children with serious psychological problems (and children who are delinquent) which children would threaten the welfare of the other children such as Plaintiffs. Defendants failed to separate children of inappropriate ages.
 (b) Safety. Child Haven has no policy or procedure to insure adequate supervision of children such as those involved in the rape and assault of the Plaintiffs. Design and operation of the Child Haven facility was inadequate to protect the safety of the children placed there.
 (c) Civil Rights Protection. The staff training, compensation and supervision at Child Haven was insufficient to employ and train personnel numerous or competent enough to monitor or detect children with serious psychological problems (or to deal with the disparity between dependent and neglected children and delinquent). This inadequate staffing caused the infringement of Plaintiff's civil rights.
 
 
 [31]
 In failing to adequately designate state authority to establish standards, in failing to establish or rationally apply or review or identify baseline standards in accordance with national child care institutions, Defendants deprived Plaintiff of a state benefit without due process of law, in violation of the Fourteenth Amendment
 I R. tab 1 at 12-13.
 
 
 [8]
 The Eleventh Circuit in Ledbetter did not specifically address the issue of when this constitutional right was clearly established. The facts of that case are from 1982. At a minimum, Ledbetter makes the law clearly established in the Eleventh Circuit in 1987, but the opinion implies that Estelle, Doe, and Youngberg established the right much earlier