989 F.2d 289
 Taureen NORFLEET, by and through his parent and
administratrix, Toi NORFLEET; Aaron Norfleet, by
and through his parent Toi Norfleet;
Toi Norfleet, in her
individual capacity,
Plaintiffs-Appellees,
v.
ARKANSAS DEPARTMENT OF HUMAN SERVICES; Defendant,
Richard Dietz, individually and in his official capacity;
Robert Brooks, individually and in his official capacity;
and Johnnie Armstrong, individually and in her official
capacity, Defendants-Appellants.
 No. 92-2323.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1993.
Decided March 29, 1993.
 
 Amy Lynne Ford (argued), Little Rock, AR (Debby Nye and John C. Wisner III, on brief), for defendants-appellants.
 Michael Andrew Le Boeuf (argued), Little Rock, AR, for plaintiffs-appellees.
 Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Richard Dietz, Robert Brooks, and Johnnie Armstrong ("the defendants") appeal the district court's[1] denial of summary judgment based on qualified immunity. We affirm.
 
 I. BACKGROUND
 
 2
 On August 17th, 1991, Toi Norfleet left her children, Taureen and Aaron, with a next-door neighbor and babysitter, Sheila Tolbert, while Norfleet went on a two day trip to Memphis, Tennessee. Four year old Taureen had a history of medical problems, including asthma, and suffered an asthma attack on August 18th. Tolbert contacted emergency personnel who transported Taureen to Baptist Memorial Hospital. For reasons not specified in the complaint, Tolbert was arrested by police officers and Aaron was placed in the custody of another neighbor. Taureen was treated, given two types of medication to take with him, and was released into the custody of the Arkansas Department of Human Services ("DHS"). On the morning of August 19th, Robert Brooks, a caseworker for DHS, took Taureen to the home of Johnnie Armstrong, a certified foster parent operating a foster home for DHS.
 
 
 3
 It appears that Taureen took most of his medication while in Armstrong's custody, but Armstrong neither supervised nor took possession of the medication. About 12:30 a.m. on August 20th, Taureen told Armstrong he was having problems breathing; Armstrong told Taureen to return to bed. Several hours later, Armstrong called emergency medical personnel and Taureen was taken to Arkansas Children's Hospital at 2:37 a.m. Taureen was pronounced dead at 3:35 a.m.
 
 
 4
 Norfleet had returned from Memphis on August 19th around 4:30 p.m., and had called DHS to ask about Taureen. When Norfleet received only prerecorded messages at DHS, she drove to police headquarters for help in locating Taureen. The police put her in contact with a DHS worker who told her that Taureen was fine and would probably be returned to her the following morning. DHS personnel then called her at 5 a.m. to tell her that Taureen had died at Arkansas Children's Hospital.
 
 
 5
 Norfleet brought an action under 42 U.S.C. § 1983 against DHS, Dietz (the Director of DHS), Brooks, and Armstrong. Norfleet alleged in her complaint that the defendants were deliberately indifferent to the medical needs of Taureen, which deprived him of his life without due process of law. Norfleet also alleged the same deprivation damaged Taureen's brother, Aaron. The defendants made a motion for summary judgment which was granted in part and denied in part. The court granted the motion concerning Norfleet's claims against the DHS, the individual defendants in their official capacities for money damages, and against all defendants for negligence, but denied the motion for summary judgment based on qualified immunity. The defendants appeal the denial of qualified immunity.[2]
 
 II. DISCUSSION
 
 6
 As government officials performing discretionary functions, Dietz, Armstrong, and Brooks are shielded from liability for civil damages in a § 1983 action unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." J.H.H. v. O'Hara, 878 F.2d 240, 243 (8th Cir.1989), cert. denied, 493 U.S. 1072, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990) (citation and quotation omitted). The district court correctly determined the issue before it was whether "a reasonable official would have understood at that time that when the state removes a child from the custody of his parents or their agents, the state owes that child a duty of safekeeping, and that deliberate indifference to the serious medical needs of a child in state custody violates the Due Process Clause." Norfleet ex rel. Norfleet v. Arkansas Dept. of Human Servs., 796 F.Supp. 1194, 1198 (E.D.Ark.1992). The district court concluded the law establishing a violation of Taureen's constitutional rights was clearly established at the time of the defendants' actions and that the defendants were not entitled to qualified immunity.
 
 
 7
 In order to determine whether a right is clearly established, it is not necessary that the Supreme Court has directly addressed the issue, Benson v. Allphin, 786 F.2d 268, 275 (7th Cir.), cert. denied, 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986), nor does the precise action or omission in question need to have been held unlawful. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "[I]n the absence of binding precedent, a court should look at all available decisional law including decisions of state courts, other circuits and district courts...." Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir.1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989) (citation and quotation omitted). With this in mind, we must determine whether, in 1991, the right of an individual in foster care to receive adequate medical supervision was "either expressly established by, or clearly implicit in, existing case law...." K.H. ex rel. Murphy v. Morgan, 914 F.2d 846, 850 (7th Cir.1990). The Supreme Court has not expressly decided the extent of due process rights to safety for children in foster care, but the Court has addressed the due process rights of prisoners, involuntarily committed mental patients and other individuals in state custodial settings.
 
 
 8
 In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that the Eighth Amendment requires a state to provide adequate medical care to incarcerated prisoners because a prisoner cannot care for himself and must rely on prison officials to treat his medical needs. Id. at 103, 97 S.Ct. at 290. This analysis was later applied to involuntarily committed mental patients in Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). In Youngberg, the Court held that individuals in state confinement enjoy "constitutionally protected interests in conditions of reasonable care and safety...." Id. at 324, 102 S.Ct. at 2462. More recently the Supreme Court held that although there is no affirmative duty of the state to protect a child who is in the parents' custody, "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 198, 109 S.Ct. 998, 1004-05, 103 L.Ed.2d 249 (1989). Deshaney left open the possibility that due process might be implicated in a foster care situation. The court noted:
 
 
 9
 Had the State by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect.
 
 
 10
 Deshaney, 489 U.S. at 201 n. 9, 109 S.Ct. at 1006 n. 9.
 
 
 11
 Several circuits have interpreted the scope of the due process rights of individuals under state care, and in particular, the rights of children in foster care. The Second Circuit was the first circuit to address this issue in Doe v. New York City Dept. of Social Servs., 649 F.2d 134 (2d Cir.1981), after remand, 709 F.2d 782, cert. denied sub. nom. Catholic Home Bureau v. Doe, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). In Doe, a foster child sued her legal custodian and a child welfare agency in New York alleging that state officials violated her constitutional rights when they failed to investigate alleged sexual abuse of her foster father. The court held that government officials may be liable under § 1983 for failure to act when the duty to act exists. "When individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the constitution." Id. at 141. Similarly, the Eleventh Circuit has determined that a foster child involuntarily placed in a foster home has similar rights as a prisoner involuntarily placed in a penal institution. Taylor ex rel. Walker v. Ledbetter, 818 F.2d 791 (11th Cir.1987) (en banc), cert. denied, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989). The court stated that although a closer relationship exists in a prison setting, the situations are sufficiently analogous to permit a § 1983 action. "With contemporary society's outrage at the exposure of defenseless children to gross mistreatment and abuse, it is time that the law give to these defenseless children at least the same protection afforded adults who are imprisoned as a result of their own misdeeds." Id. at 797. When the Sixth Circuit considered a § 1983 action filed by a child that was sexually abused in foster care, the court relied on Taylor and Doe in holding that "due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes." Meador v. Cabinet for Human Resources, 902 F.2d 474, 476 (6th Cir.), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). Finally, in Morgan, the Seventh Circuit addressed whether a child in state custody has a right not to be placed with a foster parent whom the state knew or suspected to be a child abuser. The court held that "[o]nce the state assumes custody of a person, it owes him a rudimentary duty of safekeeping no matter how perilous his circumstances when he was free." 914 F.2d at 849.
 
 
 12
 This circuit initially adopted a narrow view of a state's duty to protect individuals, and limited that duty to situations in which an individual was in prison or a "prison-like environments." Harpole v. Arkansas Dept. of Human Servs., 820 F.2d 923, 927 (8th Cir.1987). Since Harpole, however, the state's duty to protect certain individuals has been extended beyond the strict requirements of a prison-like setting. See Dorothy J. v. Little Rock School Dist., 794 F.Supp. 1405, 1420 (E.D.Ark.1992). In a pre-DeShaney opinion, Wells v. Walker, 852 F.2d 368 (8th Cir.1988), cert. denied, 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989), we implicitly extended the narrow view of state duty beyond the strict custodial limits of Harpole. In Wells, relatives of a murdered woman brought a § 1983 action against prison officials who released and transported an inmate to the woman's store. The court found that "Harpole's requirement of a prison-related environment is satisfied in this case by the transportation link between the prison and [her] store." Id. at 370. The court held that the state has an affirmative duty to protect in two situations: "[f]irst when a 'special custodial or other relationship[ ] created or assumed by the state' exists between a particular individual and the state; or second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have been in." Id. (citations omitted). In Freeman v. Ferguson, 911 F.2d 52 (8th Cir.1990), we considered whether a state had a duty to protect citizens from private violence. The court did not constrain itself to the requirement of a prison-like setting. "It is not clear, under DeShaney, how large a role the state must play in the creation of danger and in the creation of vulnerability before it assumes a corresponding constitutional duty to protect. It is clear, though, that at some point such actions do create such a duty." Id. at 55. Recently, our court in a closely divided en banc opinion summarized the state's duty to protect individuals: "[T]he Due Process Clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." Gregory v. City of Rogers, Ark., 974 F.2d 1006, 1010 (8th Cir.1992) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993).
 
 
 13
 In this case, a special custodial relationship (as described in Wells ) was created by the state when it took Taureen from his caregiver and placed him in foster care. Cases from this and other circuits clearly demonstrate that imprisonment is not the only custodial relationship in which the state must safeguard an individual's civil rights.[3] In foster care, a child loses his freedom and ability to make decisions about his own welfare, and must rely on the state to take care of his needs. It cannot be seriously doubted that the state assumed an obligation to provide adequate medical care for Taureen; the reason Taureen was placed in foster care was precisely because he was not able to take care of himself and needed the supervision and attention of an adult caregiver. We thus conclude that, in light of the case law existing at the time of this tragic incident, combined with the undeniable nature of the state's relationship with and corresponding obligations to Taureen, it was clearly established in 1991 that the state had an obligation to provide adequate medical care, protection and supervision.
 
 
 14
 Finally, we must only briefly address Brooks and Armstrong's contention that they are absolutely immune from § 1983 liability under Arkansas law. See Ark.Code Anno. §§ 12-12-517 and 9-28-412. State statutory law can not be used as a shield from liability under federal law. See Martinez v. California, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980); U.S. Const. art. 6, cl. 2. Taureen's complaint set forth allegations of deliberate or conscious indifference, and if proven, these allegations are sufficient to give rise to a § 1983 claim irrespective of any immunity granted under Arkansas law.
 
 III. CONCLUSION
 
 15
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 An interlocutory appeal may be taken from a denial of qualified immunity. Drake v. Scott, 812 F.2d 395, 398 (8th Cir.), modified on other grounds, 823 F.2d 239 (1987)
 
 
 [3]
 See also Yvonne L. ex rel. Lewis v. New Mexico Dept. of Human Servs., 959 F.2d 883, 892 (10th Cir.1992) (court held that in 1992 the law was clearly established that children have a right to reasonable safety while in foster care.)